## State of Vermont v. David Sanborn

[584 A.2d 1148]

No. 89-468

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed November 30, 1990

*Howard E. VanBenthuysen*, Franklin County State's Attorney, *James A. Hughes, Diane C. Wheeler* and *Jo-Ann L. Gross*, Deputy State's Attorneys, and *Timothy J. Ryan*, Law Clerk (On the Brief), St. Albans, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, Montpelier, and *Carol Marks*, Public Defender, Newport, for Defendant-Appellant.

**Dooley, J.** Defendant appeals the revocation of his probation and the imposition of his underlying sentence of four-to-eight years imprisonment. We affirm.

On August 25, 1986, defendant pled guilty to sexually assaulting a juvenile. The trial court suspended the prison sentence and placed defendant on probation with special conditions. The probation warrant included standard condition two, which required defendant to "work, seek employment or participate in vocational training to the full satisfaction of your probation officer," and standard condition eight, which required defendant to

"participate fully in any program to which you may be referred by the court or your probation officer." The warrant also contained special condition twenty-one, which stated: "You shall attend weekly counseling through Franklin Mental Health, with a waiver of confidentiality between Mental Health and the Probation Department."

From October 1986 to January 1987, defendant participated in a group counseling program offered in St. Albans by Franklin-Grand Isle Mental Health Service (FGIMH). The FGIMH program was then disbanded due to a shortage of staff. Because no other local group was available, defendant attended individual counseling through FGIMH from February 1987 through July 1987, at which time counseling was terminated because of his failure to pay for treatment. In February 1988, defendant's probation officer referred him to a group treatment program for sex offenders, conducted by College Street Center for Psychotherapy (CSCP) in Burlington. Defendant met with the CSCP psychologist for two individual intake sessions. The psychologist concluded that despite an IQ in the low 70s, defendant possessed sufficient intelligence to participate fully in the program. Defendant attended approximately forty group sessions from March 1988 until February 1989. At that time, the group psychologist terminated defendant from the program because of his lack of active participation and unwillingness to meet treatment agreements. In a letter to defendant's probation officer, the psychologist expressed his belief that defendant was not appropriate for outpatient treatment, and suggested that a better alternative might be the Vermont Treatment Program for Sexual Offenders at the Chittenden County Correctional Facility. The psychologist outlined four reasons for his decision: (1) defendant's failure to interact constructively with group members and co-therapists; (2) defendant's failure to adequately prepare his assignments; (3) defendant's lack of employment resulting in "boredom and too much free time," and thus, a risk of reoffense; and (4) defendant's failure to meet agreements to pay for treatment.

On March 8, 1989, defendant's probation officer issued a probation violation complaint, alleging that defendant had failed to comply with standard conditions two and eight, and special condition twenty-one. After a hearing on the merits, the trial court

made findings and concluded defendant had violated condition eight—to "participate fully in any program to which you may be referred by the court or your probation officer"—and sentenced defendant to the underlying sentence of four to eight years.

Defendant first makes a series of arguments related to the requirement that he pay for the treatment at CSCP. Labeling this requirement as a modification of his probation agreement, he challenges it as having been imposed without a hearing and without adequate grounds. In a related argument, he attacks the trial court's findings for omitting any finding that he was able to pay for treatment. At least the first two parts of the argument are based on settled law. Both federal and Vermont law require a hearing before a court may modify probation conditions to increase the responsibilities of a probationer. *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); V.R.Cr.P. 32.1(b); 28 V.S.A. § 253. We have also held that because of the contractual nature of probation, conditions may not be modified except with the probationer's consent or a finding of changed circumstances. *State v. Day*, 147 Vt. 93, 96, 511 A.2d 995, 998 (1986). We recognized in *State v. Foster*, 151 Vt. 442, 447, 561 A.2d 107, 110 (1989), that inability to pay could be a defense in a probation revocation case where nonpayment was the cause of the probation violation.

Defendant's legal arguments help him, however, only if his probation was violated for failure to meet the new requirements imposed by the alleged modification. Even if we accept defendant's argument that imposing a requirement to pay for treatment is a modification of his probation[1] or his argument that he is unable to pay for treatment, we cannot find that these arguments raise a valid defense to the State's revocation petition where the nonparticipation involved actions unconnected with the payment obligation.

We addressed a claim similar to those made here in *State v. Foster*, 151 Vt. at 447–48, 561 A.2d at 110. In *Foster*, we rejected the probationer's claim that his inability to pay was the cause of

---

[1] We expressly do not decide this question. Nor do we decide the State's contention that imposition of a payment requirement is specifically authorized by 28 V.S.A. § 254(b). We also do not decide whether defendant can avoid revocation by attacking a requirement to which he specifically agreed.

his failure to complete psychological screening, and held that the record supported a finding that defendant's failure to attend was unrelated to his financial concerns. We recognized that "[a] case may arise where a defendant intends to 'actively participate' in mental health counseling or screening, yet cannot participate because of his inability to pay the costs. Such was not the case here." *Id.* at 448, 561 A.2d at 110. The facts of this case are similar to those present in *Foster.*

■ Viewed in the light most favorable to the State, *State v. Millard,* 149 Vt. 384, 384, 543 A.2d 700, 701 (1988), we find ample evidence to support a conclusion that defendant failed to participate fully in group counseling at CSCP and that his failure was unrelated to the payment requirement. The record shows that despite his capability and initial willingness to take part in the CSCP program, defendant's participation was marred by a lack of cooperation, disruptive and impulsive conduct during the sessions, aggressive and belligerent behavior toward staff, and a failure to adequately complete assignments. In fact, CSCP allowed defendant to continue despite his nonpayment. We cannot conclude on this record that defendant's nonparticipation in counseling was related to the fact that the program charged a fee.[2]

The trial court's conclusions make it clear that it found a violation of condition eight without regard to the payment obligation and defendant's failure to meet it. At the close of the evidence, the court stated on the record: "I'm finding this violation . . . because he wouldn't cooperate with counseling." The court made written findings detailing this conclusion, including findings that defendant was belligerent and threatening at group meetings, that he did not accept responsibility for the crime and blamed the victim and that he was unwilling to perform work assignments despite the ability to do so. In the writ-

---

[2] Defendant argues that the nexus exists because all of defendant's difficulties with the group sessions were caused because his relationship with the psychologist was soured by his nonpayment of the fees. His asserted support for this theory is that he participated successfully in the FGIMH program without incident and that program was free. We do not believe the evidence at the hearing supports this theory. His inappropriate participation at the group sessions, his unwillingness to complete assignments and his continued unemployment could not be connected with the fee issue.

ten findings, the court concluded that defendant had "failed to genuinely participate with the group" and that the psychologist's testimony that defendant was at risk to reoffend was supported by the evidence. Although the court also found that defendant did not pay for counseling, despite an ability to pay,[3] these findings are not necessary to the court's conclusion.

■ Defendant next claims that revocation could not be based on his participation at CSCP because the specific condition that he attend counseling at FGIMH controls over the general condition that he "participate fully in any program" to which he might be referred. "In essence, defendant's argument is one of contract construction drawing on the fact that probation involves a contractual undertaking between the court and the defendant." *State v. Duffy*, 151 Vt. 473, 477, 562 A.2d 1036, 1038 (1989). In *Duffy*, we rejected the argument that standard probation condition number eight could not be construed to require mental health counseling where the probation warrant failed to invoke a specific condition that defendant obtain such treatment. We held that "defendant must comply with condition eight *whether or not* the trial court chose to add a specific mental health counseling requirement to the probation order." *Id.* at 478, 562 A.2d at 1039 (emphasis supplied). Here, defendant's claim is directly parallel to the claim in *Duffy*—he relies upon the presence, rather than the absence, of a specific condition, to argue that standard condition number eight is ineffective with respect to mental health treatment. As in *Duffy*, we find defendant's interpretation of the interaction of the conditions to be unreasonable in light of the purposes of probation. If the probation officer had required defendant to attend a program other than one at FGIMH, while the FGIMH program existed, we would agree that the specific command imposed in condition twenty-one would be unlawfully nullified by the officer's action under the authority of condition eight. Once it became impossible to implement condition twenty-one, however, there was no longer a conflict. As in *Duffy*, we are unwilling to imply a conflict where one does not clearly exist.

---

[3] These findings also answer defendant's argument that the court did not consider whether defendant could pay for counseling. As discussed *infra*, we conclude that these findings are supported by the record.

In *Duffy*, we gave weight to the fact that the trial court had construed the probation agreement against defendant, holding that "we must uphold [the trial court's construction] if there is a factual basis for the trial court's conclusion." 151 Vt. at 477, 562 A.2d at 1038. Without citing *Duffy*, defendant argues that the failure of the trial court to construe the contract and address his contract construction arguments warrants reversal. A review of the record shows that during both the merits and sentencing hearings the trial court acknowledged defendant's claims. Although it did not cite the case by name, the court clearly referred to our holding in *Duffy* and recognized its applicability to the present case. We take that reference as rejecting the construction defendant urged in the trial court and here.

██ ██ Finally, defendant contends that reversal is required because some of the findings are unsupported by the evidence and the court failed to weigh the evidence. Findings fairly and reasonably supported by any credible evidence must stand. *State v. Mace*, 154 Vt. 430, 434, 578 A.2d 104, 107 (1990). We have reviewed the evidence and conclude the court's findings here are adequately supported.

██ Relying upon *Krupp v. Krupp*, 126 Vt. 511, 236 A.2d 653 (1967), defendant attacks the findings from another angle by arguing that they recite testimony provided at the hearings, without indicating the weight the court attached to the testimony. The findings here are not mere recitations that testimony was given, which was the main concern in *Krupp*. Although the Court in *Krupp* indicated concern about the issuance of findings that were taken verbatim from a party's requests, later decisions show that the trial court may accept the testimony of specific witnesses or specific requests for findings and adopt the content of that testimony or those requests as the findings of the court. See, e.g., *Bonanno v. Bonanno*, 148 Vt. 248, 250, 531 A.2d 602, 603 (1987). We must presume that the court exercised its independent judgment and weighed the evidence as long as the court doesn't simply recite that specific testimony was given, without showing whether the court believed the testimony in whole or in part. As long as the findings are supported, we have no grounds to conclude that the court did not consider all the evidence offered and then adopt that which it believed.

*Affirmed.*