# State of Vermont v. Harold Leggett

[709 A.2d 491]

No. 96-249

Present: Amestoy, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed November 21, 1997

Motion for Reargument Withdrawn February 2, 1998

*Scot Kline,* Chittenden County State's Attorney, and *Pamela Hall Johnson,* Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *Anna Saxman*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Amestoy, C.J.** Defendant Harold Leggett appeals revocation of his probation for violation of a condition prohibiting contact with children under the age of sixteen without the approval of his probation officer. Defendant argues that the court erred by allowing introduction of hearsay testimony about defendant's actions without first making a finding and stating reasons as to whether there was good cause to admit the testimony. We affirm.

In February 1993, defendant pled nolo contendere to a charge of sexual assault against his stepdaughter, a minor. The court sentenced defendant to serve twenty-two months to twelve years with all suspended except twenty-two months. Defendant was given credit for time served and placed on probation.

In February 1994, defendant was sentenced to an additional one year to serve upon findings that his disruptive behavior in sex-offender group treatment and his nonpayment of counseling costs violated conditions of his probation. Defendant returned to the community in September 1994. Following unsubstantiated reports that defendant was having contact with children under age sixteen in 1994 and 1995, defendant's probation officer received a substantiated report in January 1996. She filed a probation-violation complaint alleging that defendant violated the condition of his probation prohibiting contact with children under age sixteen without approval of his probation officer. The probation officer recommended that the court impose defendant's underlying sentence.

At two days of hearings on the merits, eight witnesses testified, including defendant and a minor who was under age sixteen at the time of the alleged contact. Following the hearings, the court made oral findings and concluded that defendant had violated a condition of his probation by having contact with children under sixteen. The court sentenced defendant to serve the underlying sentence of twenty-two months to twelve years with credit for time served.

On appeal, defendant claims that he was substantially prejudiced at the probation-revocation hearing by the introduction of hearsay testimony without which, he argues, "the court may not have found a violation or sentenced [him] so harshly." Defendant's principal objection is to the testimony of a Social and Rehabilitation Services worker who interviewed the seven-year-old girl with whom defendant

allegedly had contact.[1] Defendant correctly contends that our holding in *State v. Austin*, 165 Vt. 389, 685 A.2d 1076 (1996), requires the trial court in a probation-revocation hearing to make an explicit finding and state its reasons on the record as to whether there is good cause for dispensing with a probationer's confrontation right and admitting hearsay into evidence. *Id.* at 396, 685 A.2d at 1081. The trial court made no such finding here.[2]

We were recently obligated to vacate a probation-revocation decision and remand for additional findings because, notwithstanding sufficient nonhearsay evidence for the court to find that the defendant violated at least one condition of probation, the court did not specify which conditions of probation were violated and how they were violated. See *State v. Styles*, 166 Vt. 615, 616, 693 A.2d 734, 735 (1997). Consequently, we were unable to determine whether the trial court relied on impermissible hearsay in revoking defendant's probation. *Id.*

■  Here, the trial court identified the condition of probation and specified how it was violated. The court's revocation of probation must be affirmed if, without considering the hearsay, there was "sufficient evidence" in the record to support the trial court's conclusion. *In re B.S.*, 163 Vt. 445, 454, 659 A.2d 1137, 1143 (1995); see *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994) (admission of hearsay evidence in probation-revocation hearing was harmless error because record contained sufficient admissible evidence to support district

---

[1] Defendant also objects to the introduction of a "treatment summary" upon which he claims "[o]ne part of the court's conclusion may have rested." Assuming without deciding that the statements within the summary constitute hearsay, the record is devoid of any indication that the trial court relied upon the summary. In addition, the conclusion of the court to which defendant excepts, that "probation is not working," was amply demonstrated by admissible evidence and testimony. See *State v. Emery*, 156 Vt. 364, 371, 593 A.2d 77, 81 (1991) ("We need not decide whether error occurred since we are convinced that introduction of the evidence did not have the slightest effect in this case and was therefore harmless.").

[2] The State argues that *Austin* does not apply because it was issued after defendant's conviction and sentence became final, and after the probation proceedings occurred. We recently acknowledged our adoption of the common-law rule that, except in extraordinary circumstances, the Court will give effect to a change in the law while a case is on direct review. See *State v. Styles*, 166 Vt. 615, 616, 693 A.2d 734, 735 (1997). Because defendant's appeal was on direct review at the time *Austin* was issued and because extraordinary circumstances are not present, we hold that *Austin* may be applied to defendant's case.

court's decision).[3] Notwithstanding defendant's assertion that hearsay testimony admitted without the requisite *Austin* finding was of controlling significance to the court's decision to revoke probation, there was ample direct evidence to support the conclusion that defendant had had contact with children under age sixteen in violation of the terms of his probation. See *State v. Sanborn*, 155 Vt. 430, 436, 584 A.2d 1148, 1152 (1990) ("Findings fairly and reasonably supported by any credible evidence must stand.").[4]

H.D. testified that while she was under age sixteen she visited the home of seven-year-old S.L. when defendant was present. She also testified that S.L. called defendant "uncle," a fact admitted by defendant in his own testimony. H.D. stated that defendant did not leave when she visited the house, although she was under age sixteen on both occasions where she recalled seeing defendant. The trial court also had the benefit of an affidavit signed by H.D. that described her contacts with defendant. Unlike *Austin*, where we struck a finding supported only by an improperly admitted affidavit, see *Austin*, 165 Vt. at 397-98, 685 A.2d at 1082, here the court's finding that defendant was present while children were present is supported by H.D.'s testimony and her admissible affidavit.

There was also sufficient evidence — without reliance on hearsay testimony — to support the court's finding that defendant attended a superbowl party where seven-year-old S.L. was present. The trial court found that defendant did not leave the party despite the

---

[3] The dissent argues that the court's decision can be affirmed only if we find the error was harmless beyond a reasonable doubt. See 167 Vt. at 447, 709 A.2d at 496. The assertion that this more rigorous standard of review has been extended to probation-revocation hearings finds little support in precedent or logic. Contrary to the claims of the dissent, our decision in *State v. Emery*, 156 Vt. 364, 593 A.2d 77 (1991), did not announce a standard of review for an evidentiary error in a probation-revocation case, but instead concluded that "[w]e need not decide whether error occurred." *Id.* at 371, 593 A.2d at 81. Moreover, as the dissent correctly maintains, our standard of review is more rigorous in criminal cases "because of the elevated standard of proof." 167 Vt. at 447, 709 A.2d at 496. We find it relevant that a probation hearing is neither a proceeding designed to punish a criminal defendant for violation of the criminal law, *United States v. Meeks*, 25 F.3d 1117, 1123 (1994), nor does it carry a burden of proof any higher than a preponderance of evidence. 28 V.S.A. § 302(a)(4). We have previously recognized the logic of applying a standard of review consistent with the standard of proof. See *State v. Carter*, 164 Vt. 545, 556, 674 A.2d 1258, 1266 (1996).

[4] The dissent's claim that "[t]he only evidence that directly supports that contacts were numerous . . . was the *improperly admitted hearsay*," 167 Vt. at 449, 709 A.2d at 498, ignores direct admissible evidence of at least three contacts defendant had with children under the age of sixteen in violation of the terms of his probation. The transcript allows us to determine whether there was a factual basis for the court's oral findings and revocation of probation. *State v. Millard*, 149 Vt. 384, 386, 543 A.2d 700, 701-02 (1988).

presence of S.L., except to respond to an emergency call from work. The court further found that defendant returned to the party without determining whether the child was still there. Each fact central to the court's finding relating to the "superbowl contact" was elicited from defendant on cross-examination.

There was more than a preponderance of admissible evidence to support the trial court's determination that H.D.'s contacts with defendant and defendant's presence at the superbowl party with S.L. were violations of the condition of probation prohibiting contact with children under age sixteen. See 28 V.S.A. § 302(a)(4) (court may revoke probation after violation is established by preponderance of evidence). Either determination satisfies the requirement that "[t]he trial court must first make a factual determination of what actions the probationer took, and then make 'an implicit legal conclusion that certain acts constitute a violation of the probationary terms.'" *Austin*, 165 Vt. at 398, 685 A.2d at 1082 (quoting *Resper v. United States*, 527 A.2d 1257, 1260 n.1 (D.C. 1987)).

Defendant argues, however, that even if direct evidence supports the finding that he did have contact with children under age sixteen, it is only the hearsay statements of S.L. that can be construed as the evidentiary basis for the court's characterization of defendant's contacts with the child as "numerous" and "not inadvertent." The language of the trial court with which defendant takes issue came at the imposition of sentence, during which the court made the following statement:[5]

> The Court is persuaded that, Mr. Leggett, these have not been inadvertent contacts. The[y] have been numerous. The Court finds from the evidence, and I think, probation is not working and that, if there is going to be release, it ought to be under parole and the close supervision that parole allows.

Despite defendant's repeated claim that characterization of his contacts with children under age sixteen as "numerous" and "not inadvertent" could have been predicated only upon S.L.'s hearsay statements, a review of the transcript reveals an abundance of direct evidence that amply supports the court's statement. This is especially true when one understands the "arrangement" between defendant

---

[5] Prior to the court's remarks, defendant, attempting to minimize the frequency of his contacts with S.L., said in a statement to the court: "And I'm told that if I'm there at the house and that little one comes in I'm supposed to leave. And that's what I did *most* of the time." (Emphasis added.)

and S.L.'s mother, a relationship that the trial court had the benefit of examining when weighing their testimony.[6]

S.L.'s mother testified that she saw defendant four or five times each week and that defendant stayed overnight at her house or she stayed overnight at his house. Defendant testified that S.L.'s mother cooked his supper and did his laundry.

The mother testified that defendant's twin brother is the father of S.L. and that she and S.L. occasionally visit the father in jail where he is serving time for sexual assault on a minor whom defendant also assaulted. The mother stated that she does not believe that either defendant or his brother sexually assaulted children. She testified that she maintains this belief even though defendant admitted to sexually assaulting his stepdaughter. She also acknowledged that she wrote checks for defendant's sex-offender counseling.

Although defendant and S.L.'s mother testified that they made child-care arrangements such that S.L. was never present when defendant was with S.L.'s mother and that when defendant and S.L. came in contact, immediate steps were taken to absent one from the other, the trial court was not required to find their testimony credible. See *State v. Parker*, 139 Vt. 179, 182, 423 A.2d 851, 852 (1980) (trier of fact has sole determination concerning weight of evidence, credibility of witnesses, and persuasive effect of testimony). The court in fact had sufficient basis to doubt the veracity of the testimony of both the mother and defendant. The mother testified that she saw defendant four or five times each week after she finished work at 9:00 or 11:00 p.m. or on her days off. The visits ranged from less than an hour to overnight and took place at either of their houses. While the mother was at work, S.L. stayed with a daycare provider. According to the mother, if S.L. came home from daycare and defendant was at the mother's house, defendant would leave or the mother would take him home. The mother testified that while she drove defendant home, S.L. would stay with her older sister or the mother would take S.L. back to daycare or to a friend's house.

The mother's testimony on cross-examination undermines her claim that alternative care arrangements minimized any contact

---

[6] Our review of the testimony of defendant, the mother, and the witnesses who contradicted them is not predicated, as the dissent would have it, on "the possibility of disbelief." 167 Vt. at 449 n.4, 709 A.2d at 498 n.4. It rests, instead, on the reasonable and well-founded premise that clearly implausible and inherently contradictory testimony can often corroborate the fact at issue. See *Carter*, 164 Vt. at 558, 674 A.2d at 1268 ("Perhaps the strongest corroboration [of the State's case] was defendant's own explanation of events.").

between defendant and S.L. The mother admitted that S.L.'s older sister left home for four months and did not look after S.L. during that time. When asked to provide the names of the friends who the mother claimed watched S.L. when the mother and defendant were together, the mother at first refused and then when ordered by the court to answer stated that she did not recall their last names. Most significantly, the mother claimed that the day-care provider often watched S.L. when the mother and defendant spent the night together. The day-care provider, however, testified that she had taken care of S.L. for only one night since defendant's release from prison. Given the close relationship between defendant and S.L.'s mother, the mother's contradictory testimony, and the conflicting testimony of the mother and the day-care provider, there was ample evidence to find — without reliance on the objectionable hearsay — that defendant was in contact with S.L. on numerous occasions and that these contacts were not accidental. Cf. *Sanborn*, 155 Vt. at 434, 584 A.2d at 1151 (viewing evidence in light most favorable to State, Court found ample evidence to support trial court's conclusion that defendant violated condition of probation).

■ Defendant would have us reverse a trial court's revocation of probation and imposition of sentence where the result " 'could have changed' " had the court not heard the hearsay testimony. (Quoting *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190 (1985)) (emphasis omitted). *Austin*, however, was not intended to establish a per se rule requiring reversal whenever hearsay testimony is admitted without a finding of good cause to dispense with the probationer's confrontation right. Our primary inquiry continues to be whether credible evidence fairly and reasonably supports the court's findings. See *Austin*, 165 Vt. at 398, 685 A.2d at 1082. If a probation violation is established, the court has discretion to revoke probation and require defendant to serve the underlying sentence. 28 V.S.A. § 304(a); see *State v. Therrien*, 140 Vt. 625, 628, 442 A.2d 1299, 1301 (1982) (absent showing that trial court abused or withheld its discretion, enforcement of original sentence after finding of violation is without error).[7]

---

[7] Defendant's portrayal of the imposition of the full underlying sentence of twelve years as disproportionate to the violation minimizes the violation and overstates the trial court's order. In imposing the underlying sentence of twenty-two months to twelve years, the court gave defendant credit for time served (over thirty-six months), and made it clear that it had no objection to early parole:

Here, without reliance on the objectionable hearsay testimony, the trial court had sufficient evidence to find that defendant had violated his condition of probation prohibiting him from contacts with children under age sixteen. Our review of the evidence does not support the view that but for the hearsay testimony the trial court would have determined that the violation was "fleeting and of no consequence." *Morrissey v. Brewer*, 408 U.S. 471, 495 (1972) (Douglas, J., dissenting in part). Instead, the record fully supports the trial court's judgment that imposition of the underlying sentence was consistent with the direct evidence that defendant's failure to abide by one of his most significant probationary conditions was neither inadvertent nor isolated.

*Affirmed.*

**Dooley, J.**, dissenting. In a substantial number of cases in this Court, the real legal issue is to determine the proper standard of review. That is, there has been some error in the trial court proceedings, and we must decide whether the error warrants appellate intervention. At one extreme, we can hold that any error, however small and technical, must have affected the outcome, and reverse and remand for the trial court to redo the case without the error. At the other extreme, we can affirm if it is possible to conclude that the trial court *might* have reached the result it did if there had been no error, even if we have no idea what the trial court would have done in the absence of the error. Not surprisingly, up until now we have generally avoided the extremes and intervened only when it is clear that the error may have affected the result and we cannot say what the trial court would have done if there had been no error.

Although the majority opinion does not acknowledge it, this is a case where the only real issue is to determine the applicable standard of review; all else follows from this choice. Again, without acknowledging what it has done, or that the matter is debatable, the majority uses the extreme pro-affirmance standard of review and affirms because it was possible for the trial court to have revoked defendant's probation on the admissible evidence presented, without considering the inadmissible evidence. Of course, the majority cannot, and did not,

---

And accordingly I'm going to sentence — order that [defendant] serve the underlying sentence with the credit for time served. And I will also indicate, and it may indicate on the mittimus, that the court has no objection to early parole when parole is appropriate. And that may be entered on the mittimus.

conclude that the trial court ignored the inadmissible evidence or would have revoked defendant's probation based solely on the admissible evidence. The only way to find out what the trial court would have done is to ask it; this is exactly the step the majority refuses to take.

Standards of review are important. The review standard is often more likely to determine the result of an appeal than the substantive law about which the parties are arguing. Thus, we should take as much care in developing a review standard as we do in developing the substantive law in issue in the appeal. Unfortunately, this review standard is chosen and applied with no stated rationale and without the benefit of briefing and argument.[1] No one, and particularly not the defendant, will know why the majority chose to apply a standard of review that made this appeal illusory; and we will have no idea to what cases this standard of review will apply in the future.

Certainly, the majority did not adopt this standard of review because our precedents required it. In fact, this new standard of review is inconsistent with the vast majority of our decisions, and the majority has made no attempt to explain or reconcile this inconsistency.

A probation-revocation proceeding is a hybrid criminal/civil proceeding. As a result, we should look to the standard of review for evidentiary errors in both types of cases. In civil cases, the standard of review is normally governed by V.R.E. 103. Under that standard, errors in the admission of evidence are grounds for reversal if "a substantial right of the party is affected." In applying this standard of review, we do not look to whether the trial court could have reached the same result without relying on the offending evidence. We reverse when the court could have reached a different result relying only on admissible evidence.

For example, in *Jakab v. Jakab*, 163 Vt. 575, 581, 664 A.2d 261, 263-64 (1995), a trial to court, we affirmed the trial court judgment despite its admission of inadmissible evidence because "[w]e can say with sufficient certainty that the conclusion would have been the same even if the [inadmissible evidence] had not been considered." On the

---

[1] Defendant argued that we should reverse the trial court because it relied on evidence inadmissible under *State v. Austin*, 165 Vt. 389, 390, 685 A.2d 1076, 1077 (1996). The State argued that *Austin* should not be applied retroactively. It never argued that even if *Austin* applied, the case should be affirmed on the rationale adopted by the majority and never addressed the standard of review at all. Thus, the standard of review was never addressed by either party.

other hand, in *Gilbert v. Gilbert*, 163 Vt. 549, 556, 664 A.2d 239, 242 (1995), we reversed because of the admission of inadmissible evidence, saying, "If we could be sure that the [inadmissible evidence] played no role in the court's decision, we would not reverse."

In criminal cases, our standard of review is more rigorous because of the elevated standard of proof. Thus, where evidence is admitted in violation of a defendant's constitutional rights, we can find the error harmless and affirm only if the error was harmless beyond a reasonable doubt. See *State v. Lynds*, 158 Vt. 37, 42, 605 A.2d 501, 503 (1991). This standard applies in trials to court. See *State v. Percy*, 149 Vt. 623, 629, 548 A.2d 408, 411 (1988). We have recently held that it applies to nonconstitutional errors. See *State v. Carter*, 164 Vt. 545, 555, 674 A.2d 1258, 1265 (1996).

No doubt because of the liberty interest at stake, our one case announcing a standard of review for an evidentiary error in a probation-revocation case chose a standard similar to the criminal standard. Thus, in *State v. Emery*, 156 Vt. 364, 371, 593 A.2d 77, 81 (1991), we affirmed despite the admission of inadmissible evidence because "we are convinced that introduction of the evidence did not have the slightest effect in this case and was therefore harmless." The majority has ignored the standard of review announced in *Emery*.[2]

The only exception to the uniform rejection of the standard of review used by the majority has been in juvenile cases. *In re B.S.*, 163 Vt. 445, 659 A.2d 1137 (1995), the case cited by the majority, charts the development of this limited standard of review in juvenile cases. See *id.* at 454, 659 A.2d at 1143. I believe this exception is justified in juvenile cases because of the primary focus on the interests of the children and the adverse effect on children caused by the uncertainty of lengthy litigation. The exception is particularly inappropriate where the interest at stake is the defendant's liberty. In any event, the majority makes no attempt to justify why it has relied on a limited exception for juvenile cases rather than the general standard of review for evidentiary errors.

---

[2] I do not understand the majority's argument that *Emery* does not state a standard of review inconsistent with that employed in this case. In that case, defendant argued that two hearsay statements should not have been admitted, and this was cause for reversal. This Court first noted that the statements were "cumulative." 156 Vt. at 371, 593 A.2d at 81. Under the standard of review used by the majority in this case, the decision should have gone no further since the trial court decision was, therefore, supported by admissible, untainted evidence. Instead, the Court went on to hold that any error in admission was not cause for reversal because the "evidence did not have the slightest effect in this case." *Id.*

Other courts reviewing probation revocations where the trial court has admitted hearsay in violation of the probationer's confrontation rights have used review standards similar to our criminal or general civil standards. For example, in *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986), the defendant was charged with breaching a probation condition that required obedience to all local, state and federal laws. The affidavit stated that the defendant had three times tested positive for marijuana in his blood and once was arrested for DUI and possession of narcotic paraphernalia and marijuana. During the hearing, evidence was admitted through defendant's former probation officer that the defendant was once investigated for cocaine trafficking. The Court of Appeals concluded that the evidence supporting the original charges was proper, but the hearsay evidence of the cocaine investigation violated the defendant's confrontation rights. Because it found that the trial court "seems to have relied on this evidence in deciding to revoke Bell's probation," it remanded for reconsideration of the sanction without consideration of the inadmissible evidence. *Id.* at 645; see also *United States v. Lacey*, 648 F.2d 441, 444-45 (5th Cir. 1981) (where trial court's decision to revoke defendant's probation must be remanded so that judge can state factual findings and reasons relied upon for revocation).[3] We adopted a similar approach in *State v. Styles*, 166 Vt. 615, 616, 693 A.2d 734, 735 (1997), although in that case the State alleged violations of more than one condition and the court did not specify which of the violations warranted revocation.

The majority offers no policy reason to change the standard of review for probation-revocation cases, and I know of no policy reason to overrule *Emery* or to adopt a more limited standard of review for probation-revocation cases. There are, however, strong reasons to reject the majority's standard. The district court is the "sole trier of fact" in probation-revocation proceedings. *State v. Bushey*, 149 Vt. 378, 382, 543 A.2d 1327, 1329 (1988). The majority's standard inevitably involves us in weighing the evidence, although we have not seen the witnesses. Thus, based solely on the transcript, the majority details the cross-examination of the mother of the contacted child because it finds it effective in "undermin[ing] her claim that alterna-

---

[3] *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994), the case cited by the majority, is not inconsistent with the approach of the other federal courts because the court analyzed the issue as we did in *Emery*. In *Frazier*, the court found no reversible error because the nonhearsay evidence in support of revocation was overwhelming. *Id.*

tive care arrangements minimized any contact between defendant and S.L." This is a judgment for the trial court, not this Court.

The real defect in the majority's standard of review, however, is that there is no trier of fact. Despite statements like that above, the majority has not found the facts; it has concluded only that the trial court *could have* found them in a certain way. Although the trial court found facts, it did so based in part on inadmissible evidence. No court has found the facts based on the admissible evidence.

There are serious due process concerns about a system in which no court finds facts based on proper evidence. In *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), the United States Supreme Court held that due process requires "a written statement by the factfinders as to the evidence relied on and the reasons for revoking probation." See also *Black v. Romano*, 471 U.S. 606, 613-14 (1985). Under the majority's analysis, a probation revocation is valid even if the evidence relied upon is inadmissible in whole or in part, as long as there was some evidence, not relied upon, to justify the revocation. This standard of review eviscerates the due process requirement that the trial court state the evidence it relied upon.

The danger of the new standard of review is apparent from the majority's analysis of the facts of this case. The trial court revoked probation because defendant's contacts with children under sixteen years of age were "numerous" and not "inadvertent." The only evidence that directly supports that contacts were numerous and not inadvertent was the improperly admitted hearsay. The majority's answer is that positive evidence of frequency of contacts could be supplied by the trial court's disbelief of the testimony of defendant and the mother of the child that contacts were rare and inadvertent. If the *possibility* of the trial court's disbelief can prevent reversal in this case, then it can in virtually any case.[4] The *Austin* rule that the court must make an explicit finding of good cause to admit hearsay in violation of a probationer's confrontation rights will be nullified by the standard of review.

This new standard of review lacks even-handedness in using evidence not explicitly relied upon by the trial court. Defendant

---

[4] The majority suggests that there is more than a possibility of disbelief in this case, but it bases this conclusion on its own evaluation of the weight of the evidence rather than any indication that the trial court used its disbelief of the testimony of the mother as affirmative evidence of numerous and intentional contacts. In doing this, it is usurping the role of the trial court to determine credibility of witnesses and weight of the evidence.

argued to this Court that the district court erroneously admitted and relied upon a treatment summary that contained hearsay. The majority rejects the argument because "the record is devoid of any indication that the trial court relied upon the summary." I believe that this analysis is correct, but it is abandoned when the majority finds evidence that supports affirmance. Whether or not the trial court relied upon particular pro-affirmance evidence is irrelevant to its review.

Finally, I think it significant that the extreme standard of review has been chosen to avoid what is likely to be an easy and expeditious error correction. As we held in *Styles*, the only consequence of reversal is that the trial court must make findings and conclusions based solely on the nonhearsay evidence, a task that would have taken far less time than the opinions in this appeal. If the nonhearsay evidence is as strong as the majority believes, the outcome would be the same, but we would have dealt fairly with a defendant who faces a lengthy jail sentence as a result of this case.

Under *Emery*, we must ask whether the error in admitting evidence played no role in the court's decision to revoke probation. Because the trial court revoked probation based on its conclusion that numerous violations had occurred, we cannot conclude that the inadmissible evidence played no role in the trial court's decision. As in *Styles*, I would remand for the trial court to issue a revocation decision solely on the admissible evidence, and I dissent from the majority's failure to do so. I am authorized to say that Justice Johnson joins in this dissent.