NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 23

No. 23-AP-140

State of Vermont | Supreme Court

 | On Appeal from
v. | Superior Court, Chittenden Unit,
 | Criminal Division

Jason Meade | January Term, 2024

Alison S. Arms, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Briana Hauser, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **WAPLES, J.**   Defendant Jason Mead[1] appeals the trial court's decision granting the State's motion to modify a condition of his probation. We reverse.

¶ 2.     Defendant was convicted of attempted second-degree murder in 2010. The court sentenced him to twenty-five years to life, all suspended except for fourteen-to-twenty years to serve. In imposing the sentence, the court acknowledged defendant's young age and lack of a serious prior record as mitigating factors. The court also imposed conditions of probation, including condition 32, which required that defendant complete the "Cognitive Self Change [CSC]

---

[1] Defendant filed a letter to this Court indicating that his surname is actually "Mead." Defendant's appeal was docketed "under the title of the superior court action" as required by V.R.A.P. 12(a). Insofar as he has not requested that the trial court alter the title of the case below, we have not altered the spelling in the caption of this appeal.

Program as deemed approrpiate [sic] by PO." The unique structure of defendant's sentence meant that he would become eligible for community furlough in June 2023 and would be released on probation in June 2029.

¶ 3.     At some point after defendant was sentenced, the CSC program was discontinued, and the Department of Corrections (DOC) implemented a new program called Risk Reduction Programming (RRP). In August 2022, defendant's probation officer moved to modify condition 32 to require defendant to undergo screening for RRP and complete the program if directed by his probation officer. Defendant did not agree to the requested modification.

¶ 4.     The State argued that the trial court had authority to modify the condition and that the requested modification essentially reiterated a requirement that was already expressly or implicitly present in defendant's existing probation conditions. According to the State, by imposing condition 32 the court had required defendant to "participate in programming to address any criminogenic needs," which at the time of his sentencing meant the CSC program. The State asserted that RRP was the same or similar to CSC. In response, defendant argued that the State had not demonstrated a change in circumstances sufficient to justify modifying the condition and that imposing the condition was unreasonable because he was never offered the opportunity to participate in CSC and would not have time to complete RRP prior to his expected release date.

¶ 5.     The trial court heard evidence on the motion over two days in December 2022 and April 2023. It subsequently issued an order granting the motion and modifying condition 32. The court first opined that modification was not necessary because RRP was substantially the same as CSC and therefore the existing condition allowed the probation officer to require defendant to participate in RRP. The court noted that defendant was also subject to conditions K and 5, which required him to participate in any programming required by his probation officer. The court nevertheless granted the motion to modify the condition, concluding that RRP was consistent with the sentencing goals articulated by the sentencing court and that the modification did not impose

2

harsher or more restrictive conditions on defendant. It therefore modified the condition to require "Risk Reduction Programming as deemed appropriate by PO." The court rejected defendant's argument that the modification violated his right to due process, concluding that defendant had the opportunity to participate in RRP in early 2022 and chose not to do so even after he was informed that it was the only way to comply with his conditions. This appeal followed.

¶ 6. Defendant argues that the trial court's decision must be reversed because the plain language of condition 32 did not require him to participate in RRP and there was no change in circumstances sufficient to justify modifying the condition. Defendant further claims that the modified condition violated his right to due process because it was vague and placed compliance outside his control. We agree that condition 32 in its original form cannot be construed to require defendant to participate in RRP. We further conclude that the trial court erred in modifying the condition over defendant's objection because the State failed to demonstrate that there had been a change in defendant's circumstances or that RRP was not harsher or more restrictive than CSC. Because we reverse on these grounds, we do not reach defendant's due process argument.

¶ 7. We first consider whether condition 32, as originally imposed, allowed DOC to require defendant to participate in RRP. "[T]he probation conditions contained in the original sentence represent a contract between the probationer and the court." State v. Whitchurch, 155 Vt. 134, 139, 577 A.2d 690, 693 (1990). "[A] probationer must be 'given fair notice as to what acts may constitute a violation of his probation.'" State v. Galanes, 2015 VT 80, ¶ 11, 199 Vt. 456, 124 A.3d 800 (quoting State v. Peck, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988)). We interpret a probation condition according to "the plain and ordinary meaning" of the language used. Id. ¶ 13. As with any contract, the proper interpretation of a probation condition is a question of law that we review de novo. Dep't of Corr. v. Matrix Health Sys., P.C., 2008 VT 32, ¶ 11, 183 Vt. 348, 950 A.2d 1201.

3

¶ 8.    The trial court erred in determining that the plain language of condition 32 allowed defendant's probation officer to require him to participate in RRP. The court reasoned that in imposing the condition, the sentencing court intended for defendant to participate in "this type of program," and that RRP and CSC were "substantially the same, 'synonymous' though with unspecified differences." However, courts are required "to enforce a probation condition as it is written and not as we wish it had been written." Galanes, 2015 VT 80, ¶ 22. The original condition stated in its entirety: "Cognitive Self Change Program as deemed approprpiate [sic] by PO." The plain language of the condition required participation in the specifically identified CSC program if defendant's probation officer determined that program to be appropriate. The "as deemed appropriate" phrase cannot reasonably be construed to allow defendant's probation officer to simply substitute a different program, and did not give fair notice to defendant of the potential for substitution. Even DOC did not interpret the condition this way, because it requested the condition be modified to require defendant to participate in RRP instead.

¶ 9.    We have rejected similarly expansive interpretations of probation conditions in the context of proceedings alleging violations of those conditions. In State v. Galloway, we reversed the trial court's conclusion that the defendant violated a probation condition requiring him to complete "a program for sex offenders approved by DOC and assume the cost of your treatment" by failing to complete the VTPSA high-intensity program while he was incarcerated. 2020 VT 29, ¶¶ 2, 17, 212 Vt. 91, 231 A.3d 1157. We examined the plain language of the condition and determined that the DOC's interpretation of the condition to require defendant to complete VTPSA was unsupported because the condition did not specify a particular program; used the word "approved," rather than "directed" or some other verb suggesting that DOC had discretion to mandate a specific program; required defendant to pay for his treatment, which implied he could complete programming in the community; and, as a whole, indicated that defendant had a choice of programs. Id. ¶ 18. We explained that the DOC's interpretation of the probation condition to

4

require defendant to complete VTPSA "added requirements not expressly or impliedly present in the condition and thus crossed the line between implementation and modification." Id. Galloway relied on several earlier decisions in which we overturned probation violations that were premised on overly broad interpretations of probation conditions. See, e.g., Galanes, 2015 VT 80, ¶¶ 21-24 (reversing determination that defendant violated condition requiring him to notify probation officer if he was planning to begin a sexual relationship by engaging in chance sexual encounter with his housekeeper, because plain language of condition did not prohibit unplanned, single occurrence of sex); State v. Bostwick, 2014 VT 97, ¶ 21, 197 Vt. 345, 103 A.3d 476 (reversing conclusion that defendant violated condition requiring him to live where probation officer directed by failing to make housing search calls every day and finding housing by certain date, because plain language of condition did not include these requirements).

¶ 10.    In this case the trial court interpreted condition 32 to require that defendant participate in CSC or an equivalent program—but the language of the condition does not contain the latter requirement. The trial court's conclusion that condition 32, as originally written, required defendant to participate in RRP is not supported by the plain language and cannot be sustained. Modification of the condition was necessary to require defendant to participate in RRP.

¶ 11.    We accordingly consider whether it was appropriate for the court to modify the condition under the circumstances present here. The trial court may modify a probation condition upon request by a probation officer or the defendant or upon its own motion. 28 V.S.A. § 253(a). A hearing and assistance of counsel are required before modification unless the modification is imposed at defendant's or the court's motion and is favorable to the defendant. Id. § 253(b); V.R.Cr.P. 32.1(b). We have held that the court may not impose harsher or more restrictive conditions of probation without either the consent of the defendant or a change in the probationer's circumstances. State v. Day, 147 Vt. 93, 96, 511 A.2d 995, 998 (1986). This is because "[c]hanging the terms of probation without either the probationer's consent or a change in

5

circumstances betrays the justifiable expectation that the agreement will be honored." Id. (footnote omitted).

¶ 12. The State argues that the discontinuation of the CSC program constituted a change in circumstances sufficient to modify the condition over defendant's objection. However, Day makes clear that, absent the probationer's consent, there must be a change in the probationer's circumstances before the court may impose harsher or more restrictive conditions. Id. at 97, 511 A.2d at 998-99. In Day, a probation officer sought to modify conditions to impose a requirement that the defendant participate in an intensive supervision program. The officer admitted that he was not seeking the change due to a change in the defendant's risk factor or because defendant had violated existing conditions. Rather, "he sought the modifications due to changes in his department's programming rather than due to changes in defendant's behavior." Id. at 94, 511 A.2d at 997. The trial court adopted the proposed conditions over the defendant's objection. We reversed, explaining that because a probation agreement is contractual in nature, changing its terms "without either the probationer's consent or a change in circumstances betrays the justifiable expectation that the agreement will be honored." Id. at 96, 511 A.2d at 998 (footnote omitted). We rejected the State's argument "that a judge has discretion to impose stricter conditions during a period of probation without any change in a probationer's behavior." Id. at 97, 511 A.2d at 998. Because the DOC sought to modify the conditions based on changes in its own programming, rather than any "significant change in the defendant's circumstances," we reversed and remanded for the lower court to reinstate the original conditions. Id. at 97-98, 511 A.2d at 998-999.

¶ 13. Here, as in Day, the DOC sought to modify condition 32 due to a change in its own programming. There was no evidence that defendant's risk factor had changed or that he had violated any probation conditions. Cf. State v. Foster, 151 Vt. 442, 446, 561 A.2d 107, 109 (1989) (holding that violation of prior conditions demonstrated change in circumstances sufficient to justify imposition of stricter probation conditions). The DOC's unilateral decision to replace CSC

6

with RRP does not, under <u>Day</u>, constitute changed circumstances that would allow the court to modify the condition over defendant's objection.

¶ 14.    The State alternatively argues that changed circumstances were unnecessary because the new requirement that defendant participate in RRP was not harsher or more restrictive than the old requirement that he participate in CSC. The trial court agreed with the State's position, finding that RRP was "nearly identical" to CSC. This finding cannot stand because there was insufficient evidence to support it. Cf. <u>State v. Sanborn</u>, 155 Vt. 430, 436, 584 A.2d 1148, 1152 (1990) (explaining in context of probation proceeding that this Court will uphold "[f]indings fairly and reasonably supported by any credible evidence" in record).

¶ 15.    At the April 2023 hearing, the State presented testimony from a DOC caseworker and the caseworker's supervisor. The caseworker testified that the CSC program was designed for risk reduction and was "meant to address risky behavior such as violent offenses." He testified that at some point after 2010, CSC was replaced with RRP. He stated that he could not "speak specifically to the programming specifications" of RRP, but that both programs were the DOC's mandated programming for violent offenders. The caseworker testified that offenders were typically scheduled to begin programming six-to-nine months before their expected release date into the community. Defendant was offered RRP for the first time in February 2022 because he would soon be eligible for furlough release. On cross-examination, the caseworker agreed that he was "not an expert on the specifics of either program. . . . I don't have expert knowledge of the techniques of the internal workings of either program."

¶ 16.    The caseworker's supervisor similarly testified that CSC and RRP were "basically synonymous with each other, that that's the required programming for violent offenders. . . . [T]he program does have some differences, but I'm not the content expert on that." The supervisor testified that, regardless of the probation conditions, DOC would require defendant to undergo RRP in order to be eligible for furlough release due to his risk level.

¶ 17. At most, this testimony shows that RRP replaced CSC as DOC's required programming for individuals incarcerated for violent offenses. Neither the caseworker nor his supervisor was able to describe the specific requirements of either program, and the supervisor admitted that there were differences between the two. There was no evidence comparing the length, intensity, or rules of the two programs. The testimony presented by the State was insufficient to support the trial court's finding that these two programs were effectively identical in how they affected offenders, and therefore did not support the conclusion that RRP was not a harsher or more restrictive condition than CSC.[2]

¶ 18. The State contends that even if the court erred in finding on this record that the programs were identical, the error was harmless because defendant was also subject to conditions K and 5, which required him to participate in any counseling, training, or residential treatment program required by his probation officer.[3] See V.R.Cr.P. 52(a) (errors that do not affect substantial rights shall be disregarded). The State did not raise this argument below, and the trial court's suggestion in its order that defendant could be required by his probation officer to attend RRP under conditions 5 and K was dicta, insofar as DOC had not attempted to invoke those conditions for that purpose. Further, our disapproval of the imposition of conditions 5 and K as "standard" conditions in State v. Putnam, 2015 VT 113, ¶ 32, 200 Vt. 257, 130 A.3d 836, and subsequent cases leads us to conclude that the conditions cannot be relied upon to uphold the trial court's decision here.

---

[2] Our decision should not be interpreted as holding that RRP is in fact harsher or more restrictive than CSC. We simply conclude that the State failed to prove in the hearing below that the two programs were essentially identical such that the trial court could modify the condition without defendant's consent or a change in defendant's circumstances.

[3] Condition K states: "If the probation officer or the court orders you to go to any counseling or training program, you must do so. You must participate to the satisfaction of your probation officer." Condition 5 states: "You must attend, participate in, and complete a residential treatment program if your probation officer tells you to do so. You must complete the program to your probation officer's satisfaction."

¶ 19. In Putnam, the defendant appealed his conviction for grossly negligent operation and resulting sentence, which included the same probation condition K that was imposed in this case. We held that the imposition of condition K was an unlawful delegation of authority by the trial court because the language of the condition contained no limitations on the counseling or training programs the probation officer could order. Id. ¶¶ 68, 70. Although the defendant did not object to the condition at sentencing, we determined that it was plain error for the trial court to impose condition K without any findings supporting either the condition or the delegation to the probation officer. Id. ¶ 73. In the subsequent case of State v. Albarelli, we concluded that condition 5 likewise constituted an impermissible delegation of authority where the trial court imposed it as a standard condition without limiting the condition or making any findings to support its imposition. 2016 VT 119, ¶¶ 55, 66, 203 Vt. 551, 159 A.3d 627. Similarly, in this case the sentencing court made no findings justifying conditions 5 or K or its broad delegation to the probation officer to choose the type of counseling, training, or residential treatment program defendant had to participate in.[4]

¶ 20. The State contends that we have interpreted conditions 5 and K to require defendants to engage in programming similar to a specifically mandated program that no longer was available, citing State v. Duffy, 151 Vt. 473, 562 A.2d 1036 (1989), Sanborn, 155 Vt. 430, 584 A.2d 1148, State v. Coleman, 160 Vt. 638, 632 A.2d 21 (1993), and State v. Anderson, 2016

_____

[4] The State argues that defendant did not challenge the imposition of conditions K or 5 in a direct appeal from sentencing and therefore is barred from opposing its harmless-error argument on the ground that those conditions are invalid. It is true that "a probationer is barred from raising a collateral challenge to a probation condition that he was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order." State v. Austin, 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996). However, this is not a probation-violation proceeding, so this rule is inapplicable. Moreover, we recognized in Austin that a probationer may challenge a probation condition as unlawful in the context of a motion to modify the condition. See id. at 401 n.3, 685 A.2d at 1084 n.3 (explaining that this Court has permitted constitutional challenges to probation conditions in motions to modify conditions, citing Whitchurch, 155 Vt. at 139, 577 A.2d at 693). Accordingly, we do not view Austin as precluding defendant from challenging the State's harmless-error claim here.

VT 40, 202 Vt. 1, 146 A.3d 876. These cases are unhelpful to our analysis because the defendants therein had been charged with violating the conditions and were therefore barred from challenging their validity. See Austin, 165 Vt. at 401, 685 A.2d at 1084. Moreover, in State v. Cornell, we rejected the argument that it was appropriate for the trial court to impose condition K as a backup in case the defendant failed to complete a more specifically mandated sex-offender treatment program. We explained:

> While it is permissible under Putnam to delegate authority to a probation officer to select among a predetermined list of programming options relevant to a defendant's particular needs—for example, substance abuse counseling or anger management—we cannot approve a delegation of "full authority" to impose counseling or training purely on the grounds that defendant may falter in his commitment to pre-existing programming.

State v. Cornell, 2016 VT 47, ¶ 18, 202 Vt. 19, 146 A.3d 895. Given the concerns we have expressed in Cornell, Putnam, and other cases about the imposition of conditions 5 and K, we decline to hold that the existence of these conditions renders the trial court's erroneous modification of condition 32 harmless—particularly because defendant could still move to modify or strike those conditions before they take effect. We therefore reverse the court's order.[5]

Reversed.

FOR THE COURT:

_____
Associate Justice

¶ 21. **CARROLL, J., dissenting.** I agree that the trial court's modification order cannot stand for many of the reasons discussed by the majority. I dissent because I believe a remand—

---

[5] To the extent the State argues that the modification was harmless because DOC could independently require defendant to participate in RRP to be eligible for furlough, we disagree. Defendant's sentence is structured in such a way that even if he never qualifies for furlough release, he will be released on probation after completing twenty years of incarceration. At that point, the probation condition will be triggered and he could be subject to a violation proceeding and reincarceration if he has not completed RRP. Thus, whether DOC requires defendant to participate in RRP for furlough purposes is irrelevant to this proceeding.

rather than just a reversal—is necessary so that the trial court can make supportable findings on the issue of whether the proposed new programming is more restrictive than the prior imposed programming. I also dissent from the majority's analysis on the State's harmless-error argument for two reasons. First, it announces a holding in an advisory posture regarding collateral challenges to probation conditions. Second, a remand would be the more appropriate mandate to the extent that conditions K and 5 are live issues in this case. Accordingly, I respectfully dissent.

¶ 22. The Supreme Court remands for further proceedings where the trial court's findings are inadequate or unsupportable on a question of law the Court must review. See, e.g., State v. Calabrese, 2021 VT 76A, ¶ 33, 216 Vt. 84, 268 A.3d 565 (remanding for trial court to make necessary findings where it applied improper legal analysis and made no relevant findings to proper legal analysis); McLaren v. Gabel, 2020 VT 8, ¶¶ 2, 66, 211 Vt. 591, 229 A.3d 422 (per curiam) (remanding for recalculation of restitution award and reconsideration of final remedy where original order was premised on clearly erroneous findings); In re Apple Hill Solar LLC, 2019 VT 64, ¶ 41, 211 Vt. 54, 219 A.3d 1295 (reversing and remanding because agency's conclusion that town plan did not constitute clear, written community standard under 30 V.S.A. § 248 was based on clearly erroneous findings); In re D.B., 2003 VT 81, ¶ 6, 175 Vt. 618, 833 A.2d 1246 (mem.) (reversing and remanding for further proceedings to determine parental rights where order terminating rights was premised on unsupported findings). This makes sense because an appellate court should not ordinarily review legal conclusions that rely on clearly erroneous findings. See State v. Lawrence, 2003 VT 68, ¶ 8, 175 Vt. 600, 834 A.2d 10 (mem.) (explaining that proper procedure in context of suppression motions is to review legal conclusions after concluding findings not clearly erroneous); State v. D'Amour, 834 A.2d 214, 219 (N.H. 2003) (concluding that material finding was clearly erroneous and remanding for further proceedings to make further findings necessary to resolve legal question). Accordingly, if we conclude that findings are clearly erroneous on a dispositive legal issue, we ought to stop there and remand for

11

further proceedings. We should do this because the trial court's legal conclusions must be supported by adequate findings, which must in turn be supported by the evidence. State v. Woolbert, 2007 VT 26, ¶ 9, 181 Vt. 619, 926 A.2d 626 (mem.).

¶ 23. Here, the court's legal conclusion to modify condition 32 on the basis that Risk Reduction Programming (RRP) is not more restrictive than the Cognitive Self Change Program (CSC) is, effectively, unreviewable. This is because the finding that RRP does not impose harsher or more restrictive conditions on defendant than the CSC program is not supported by the record. However, resolution of this issue is necessary to dispose of the appeal. If the court finds on credible evidence that RRP does not impose harsher or more restrictive conditions than CSC, it may elect to modify condition 32 without finding substantial changed circumstances involving defendant. See State v. Day, 147 Vt. 93, 97, 511 A.2d 995, 998 (1986). Therefore, the appropriate mandate is to remand to the trial court to make findings supporting its conclusion one way or another. A reversal without a remand deprives the trial court of an opportunity to correct its error and puts this Court in the position of arbitrarily deciding what is worth correcting, and what is not, based on its review of legal conclusions premised on clearly erroneous findings. This produces unpredictable outcomes, as here. See, e.g., Buchanan v. United States, 165 A.3d 297, 305-06 (D.C. 2017) (remanding for trial court to make findings necessary for appellate court to determine legal question and holding that "the proper course" in such scenario "is a record remand for consideration of the issue by the trial judge" (quotation omitted)); United States v. Ranger-Crouchet, 103 Fed. App'x 259, 260 (9th Cir. 2004) (unpub. mem.) (remanding for sentence reconsideration because district court's sentencing decision relied on clearly erroneous finding and appellate court "c[ould not] conclude, 'on the record as a whole, that the . . . error did not affect the district court's selection of the sentence imposed' " (quoting Williams v. United States, 503 U.S. 193, 203 (1992)).

¶ 24. I also dissent from the majority's holding that State v. Austin, 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996), does not preclude defendant from collaterally attacking conditions K and 5 for the first time in his reply brief. Ante, ¶ 19 n.4. As an initial matter, I would not reach this issue because a remand on the question of condition 32 resolves the appeal. Nonetheless, in my view, this holding is advisory because neither defendant nor the State litigated this question below. See In re Snowstone LLC Stormwater Discharge Auth., 2021 VT 36, ¶ 28, 214 Vt. 587, 256 A.3d 62 ("Courts are not authorized to issue advisory opinions because they exceed the constitutional mandate to decide only actual cases and controversies."). Moreover, defendant's argument raised for the first time in his reply brief, in response to the State's unpreserved harmless-error assertion, hardly satisfies the rule that the parties must actually dispute the issue for us to reach it. See In re Investigation into Programmatic Adjustments to Standard-Offer Program, 2018 VT 52, ¶ 17, 207 Vt. 496, 191 A.3d 113 ("[T]he establishment of legal doctrine derives from the decision of actual disputes, not from the giving of solicited legal advice in anticipation of issues." (quotation omitted)). Neither party presented the trial court with argument concerning conditions K and 5, and the court's sua sponte dicta in its order on the question raises more questions than the record answers. Accordingly, in my opinion, this holding is advisory.

¶ 25. Equally troubling, Austin, in contrast to the majority's interpretation, does not stand for the proposition that a probationer can litigate a specific condition, take an appeal, and thereafter challenge any other probation condition simply by virtue of the procedural posture of the case. The defendant in Austin sought to challenge a drug-testing condition for the first time during revocation proceedings involving a violation of the drug-testing condition, among others. We held that such a challenge amounted to an impermissible collateral attack. 165 Vt. at 401, 685 A.2d at 1084. In a footnote cited by the majority, we observed in Austin that a probationer can challenge a condition in many other contexts, including at a modification proceeding. Id. at 401 n.3, 685 A.2d at 1084 n.3 (citing State v. Whitchurch, 155 Vt. 134, 139, 577 A.2d 690, 693 (1990), for rule

that probationer can make facial challenge to condition for first time at modification proceeding); ante, ¶ 19 n.4. The relevant point for our purposes is that the defendant in Austin actually challenged the drug-testing condition he was charged with violating below and appealed the trial court's decision on that condition. See Whitchurch, 155 Vt. at 136-37, 577 A.2d at 691 (appealing trial court order denying modification of two probation conditions that defendant sought to modify in posttrial modification proceedings, and which was first time defendant challenged those conditions). The majority's reading of Austin and Whitchurch raises crucial questions of issue preservation and argument waiver, neither of which it addresses at all.[6] In my view, this case concerns only condition 32, and any holding on a matter of apparent first impression that the parties have not adequately litigated is advisory.

¶ 26. Finally, I dissent from the majority's analysis of the State's harmless-error argument. Ante, ¶ 20. Again, I would not reach this question because a remand on the issue of condition 32 resolves this appeal. However, to the extent that this issue must be decided, I first agree with the majority's refusal to affirm on the basis offered by the State—that defendant is bound by conditions K and 5 even if the trial court erred in modifying condition 32. Conditions K and 5 are controlled by State v. Putnam, 2015 VT 113, ¶¶ 68-71, 200 Vt. 257, 130 A.3d 836, and State v. Albarelli, 2016 VT 119, ¶ 66, 203 Vt. 551, 159 A.3d 627, respectively. See also ante, ¶ 19. Each held that conditions K and 5 cannot be imposed without particularized findings supporting their imposition and/or language limiting their application. Putnam, 2015 VT 113, ¶¶ 68-71 (condition K); Albarelli, 2016 VT 119, ¶ 66 (condition 5).

¶ 27. Here, the sentencing court imposed conditions K and 5 without particularized findings and before Putnam and Albarelli issued, and defendant has never moved to modify or

---

[6] Defendant concedes that the question of whether RRP could be imposed under Conditions K and 5 is not preserved because neither he nor the State offered any argument to the trial court on the question, and the trial court's dicta on those conditions was itself advisory.

strike them.[7] Nonetheless, if this case turned in any way on either condition—and I do not believe it does, as discussed above—the appropriate mandate would be to remand to the trial court so that it has the "opportunity to make findings to support, revise, or remove" the conditions, just as we did in Putnam, 2015 VT 113, ¶ 73. See Albarelli, 2016 VT 119, ¶ 68 (remanding conditions K and 5 "to justify [each one], make them more specific, or strike them" (emphasis omitted)). Simply because the conditions were originally imposed without particularized findings does not mean that they vanish from defendant's sentencing order. As the majority correctly notes, "probation conditions contained in the original sentence represent a contract between the probationer and the court." Whitchurch, 155 Vt. at 139, 577 A.2d at 693; ante, ¶ 7. That works both ways. Whether conditions K or 5 are justified, in a more specific form and upon more specific facts, is a question to be put, in the first instance, to the discretion of the trial court just as we concluded in Putnam and Albarelli.

¶ 28. For these reasons, I respectfully dissent.

_____
Associate Justice

---

[7] Nor, apparently, has the State sought to enforce them until this appeal. I note that in Albarelli, the State conceded that condition K should be remanded to the trial court for further proceedings because, as imposed, it was plain error under Putnam. 2016 VT 119, ¶ 55.