2005 VT 65

### State of Vermont v. Pete John Rivers

[878 A.2d 1070]

. No. 04-076

Present: **Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.),**    .
**Specially Assigned**

Opinion Filed June 10, 2005

Diane C. Wheeler and Edward J. O'Shaughnessy, Franklin County Deputy State's Attorneys, St. Albans, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, Anna Saxman, Deputy Defender General, and Vince Pearson, Law Clerk, Montpelier, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant, Pete Rivers, appeals the Franklin District Court's order imposing his underlying prison sentence after concluding that he violated a probation condition that prohibited defendant from having "contact" with children under the age of sixteen without prior written approval from his probation officer. In reliance on State v. Danaher, 174 Vt. 591, 819 A.2d 691 (2002) (mem.), and State v. Leggett, 167 Vt. 438, 709 A.2d 491 (1997), the court held that "proximity is contained within the meaning of 'contact,'" and thus, defendant violated his probation by placing himself "in close physical proximity to minors under 16 years of age" while standing near them in the lines for

rides at the Champlain Valley Fair. Aside from mere proximity in this public space, the evidence did not indicate that defendant physically touched, initiated or sought conversation with, or otherwise stalked any particular children. The court also found that defendant's probation officer had warned defendant not to attend the fair without an approved supervisor lest she file a contact violation against him. Other than the general no-contact condition, defendant's probation conditions do not contain a specific prohibition on going to public places like the fairgrounds. On appeal, defendant argues that the proximity-equals-contact rule cannot be fairly and practically extended to a case that neither involves contact with a specified individual as in *Danaher*, nor contact in a private location like the residence involved in *Leggett*. Defendant claims that an expansion of this rule beyond those contexts would unduly restrict his liberty, leaving him guessing as to what public places he could go to without being arrested for violating the no-contact condition. Defendant also concedes that the court could have modified his probation conditions to prohibit him from frequenting specific public places where children will be present in large numbers, but argues that his probation officer lacked the power to impose such a condition without approval from the court. We agree with defendant on both points, and therefore, reverse.

## I.

¶ 2. Because the facts of this case, as summarized above, are relatively straightforward, we begin by examining the scope of the proximity-contact rule as we have applied it in the past. We examine *Danaher* first because, as the following discussion will demonstrate, the reach of the proximity-contact rule was not a point of contention on appeal in *Leggett*.

¶ 3. In *Danaher*, the court found probationer Martin Danaher in violation of a probation condition that required him to have "no contact with [his victim] or her family without their prior consent and prior approval of the Probation Officer." 174 Vt. at 591, 819 A.2d at 692. The evidence against Danaher included testimony about a series of "contacts" Danaher had with his victim, some that resulted in the charged violation, and others that the trial court considered as circumstantial evidence in determining whether the charged contacts were intentional. *Id.* at 594, 819 A.2d at 695-96.

¶ 4. One of the contacts that led to the violation occurred at a property that Danaher knew his victim frequented because her close friend resided there. Danaher, who kept his horse at the friend's property,

his victim, and the friend were all by the horse pasture when the friend's horse broke free. Danaher remained in close proximity to the girls as they tried to corral the horse. Danaher offered to help the girls, but they declined. The friend specifically asked Danaher to leave, but he refused to do so, and remained within ten to fifteen feet of the girls, following his victim with "his eyes and body posture." *Id.* at 592, 819 A.2d at 693.

¶ 5. The second incident occurred the following day when Danaher drove to a bus stop used by his victim and also by his own daughters. The victim testified that Danaher saw her as he drove up, but stopped anyway. From his car, he called to his daughters who came over to see him. While lingering by the stop, Danaher stared at his victim for approximately four minutes. The court also considered other incidents where Danaher stared at his victim as he passed her in his car, or on one occasion for over an hour while she rode her horse.

¶ 6. On appeal, Danaher argued that including proximity within the definition of contact rendered the term ambiguous and vague. *Id.* at 593, 819 A.2d at 694. We rejected that argument, reasoning that proximity is within the ordinary meaning of contact as this Court and at least one other had previously held. *Id.* at 594, 819 A.2d at 695. We also cited a dictionary definition of contact that encompassed both "immediate proximity" and "visual observation." *Id.* at 593 n.2, 819 A.2d at 695 n.2. In adopting this broad definition, we concluded that it best effectuated the purpose of a "no contact" order, which we identified as "protect[ing] the victim from future occurrences of the behavior which initially resulted in the order." *Id.* at 594, 819 A.2d 695. The dissent recognized that the enforcement of the no-contact condition in the manner affirmed by the majority also served to prevent defendant from engaging in conduct that was undesirable and upsetting to the victim of the crime. *Id.* at 594, 819 A.2d at 696 (Dooley, J., dissenting); cf. *Stanton v. Iowa Dist. Ct. for Polk Cty.*, 2001 WL 98951, at *2 (Iowa Ct. App. 2001) ("The obvious purpose of a no contact order is to protect the victim of domestic abuse from harm or harassment.") (unpublished disposition). While agreeing that probation conditions could and should have been drafted to serve this purpose, the dissent rejected the idea that a condition that prohibited only "contact" with the victim gave notice that other harassing behavior such as staring or close physical presence was prohibited. *Danaher*, 174 Vt. at 594, 819 A.2d at 696 (Dooley, J., dissenting). Finally, the majority opinion concluded that, based on the evidence and inferences drawn therefrom, these

incidents were not inadvertent, but instead resulted from Danaher's intentional conduct. *Id.*

¶ 7. *Danaher* also relied upon *State v. Leggett.* In that case, Leggett was charged with violating a probation condition that, like the condition at issue here, prohibited unapproved contact with children under the age of sixteen. We found support for a no-contact violation even though the evidence in *Leggett* did not reveal any communication or physical touching between Leggett and two underage girls who were present with him in a private residence on multiple occasions. *Id.* The question presented by Leggett's appeal was not, however, whether proximity satisfied the definition of contact, but instead whether the trial court erred in allowing hearsay testimony about Leggett's actions without first finding good cause to admit the hearsay testimony. *Leggett*, 167 Vt. at 439, 709 A.2d at 491. We concluded that there was sufficient direct evidence to find a contact violation even if the hearsay evidence had not been admitted, and went on to recount that evidence. *Id.* at 440, 709 A.2d at 492-93.

¶ 8. The evidence we considered as supporting the violation included testimony from an underage girl who had been in a private residence with another underage girl on two occasions when Leggett was also present. *Id.* at 441, 709 A.2d at 493. The testimony indicated that the second girl, who resided in the house, regularly referred to Leggett as her uncle. On another occasion, Leggett attended a Super Bowl party where the second girl was present, and remained there in spite of the fact that the underage girl was one of the guests. The evidence also showed that Leggett and the girl's mother maintained a close relationship, seeing each other four or five times a week. On some of those occasions, Leggett would spend the evening at the girl's house. As the *Danaher* dissent observed, we did not consider the exact definition of "contact" in *Leggett* because that issue was not raised on appeal. *Danaher*, 174 Vt. at 595 n.3, 819 A.2d at 697 n.3 (Dooley, J., dissenting). The *Danaher* dissent speculated that Leggett chose not to raise the issue because he "would find it hard to argue that he was frequently present in the house with the child, acting as a relative, but made no contact with the child, whatever the definition of the term." *Id.*

¶ 9. We have repeatedly recognized that probation conditions should not be "'unduly restrictive of the probationer's liberty or autonomy.'" *State v. Moses*, 159 Vt. 294, 297, 618 A.2d 478, 480 (1992) (quoting *State v. Whitchurch*, 155 Vt. 134, 137, 577 A.2d 690, 692 (1990)). Moreover, a probation restriction must be reasonably related

to protecting the public from a recurrence of the crime that resulted in the imposition of probation, and must serve the statutory purpose of assisting the probationer to lead a law-abiding life. *Id.* at 297-98, 618 A.2d at 480. In *State v. Moses*, we acknowledged that a condition is reasonable if "it is not unnecessarily harsh or excessive in achieving these goals . . . conditions that restrict a probationer's freedom must be especially fine-tuned." *Id.* at 298, 618 A.2d at 481 (quotation omitted). As applied, the no-contact condition here is overbroad and unduly restrictive of probationer's freedom and autonomy.

¶ 10. No-contact conditions involving a probationer's victim are substantially less restrictive than general no-contact conditions involving a large class like children under the age of sixteen. With victim-related contact conditions, a probationer need usually avoid specifically named persons who are known to the probationer. As in *Danaher*, a probationer will likely be aware of places that the victim frequents, and can plan to avoid those places. In the event that a probationer happens upon the victim in an unexpected place, probationer may prevent a proximity-contact violation by timely departing from the scene without interacting with the victim. Cf. *State v. Coyle*, 2005 VT 58, ¶ 12, 178 Vt. 580, 878 A.2d 1062 (mem.) (concluding that coincidental proximity-contact in a public place became intentional when probationer failed to leave the scene after recognizing that his victim was present). By contrast, a probationer required to avoid proximity-contact with all children under the age of sixteen would have to refrain from going to numerous public places where essential daily business is transacted.

¶ 11. Moreover, the justifications for the proximity-contact rule in cases involving victim-specific conditions do not apply with the same force in cases involving blanket no-contact conditions. In both *Danaher* and *State v. Coyle*, another recent case that also involved proximity-contact with a probationer's victim, the victims came forward to complain about the contacts. This fact demonstrates how traumatic and distressing such contact can be for a victim. Proximity contacts can also cause problems for probationers by reawakening the mental processes that led to past abuse. Cf. *Coyle*, 2005 VT 58, ¶ 6 (noting that probationer's sex offender treatment counselor expressed special concern over probationer's proximity-contact with probationer's victim of record). This reawakening can greatly undermine the rehabilitative process that probation is intended to foster. Here, defendant's incidental contact with children at the fair, many of whom were accompanied by parents or other adults, caused no harm to those chil-

dren. The children were oblivious to defendant's past as a sex-offender, and nothing that defendant did would have alerted them to this fact so as to cause alarm or fear.

¶ 12. Unlike the public incidental contact at issue here, unapproved proximity-contact with minors in the context of a private residence presents greater dangers to the protected class and to a probationer's rehabilitation. In the public setting, a probationer is several steps removed from the opportunity to commit abuse. The opportunity to reoffend is substantially greater when a potential victim is isolated in a physical environment, like a residence, where a probationer could easily initiate abuse without having to overcome the logistical obstacles presented in a crowded public place.

■ ¶ 13. As the foregoing discussion illustrates, our previous cases have not required consideration of the proximity-contact rule's full scope. Specifically, we have not confronted the problem presented in this case where the evidence shows nothing more than incidental proximity-contact in a public place with numerous, unspecified individuals who are members of an ubiquitous class — children under the age of sixteen. Thus, this case demonstrates that, as enforced here, this common probation condition could extend to any number of other public places where children are regularly present such as grocery stores, movie theaters, libraries, fast-food restaurants, parks, or even downtown streets all across Vermont where children often congregate in large numbers after school and during the summer months. When removed from the context of victim-contact or private locations where different considerations apply, such a broad rule severely restricts a probationer's liberty while doing little to rehabilitate the offender or prevent the behavior that led to the no-contact condition in the first place. Accordingly, we decline to extend the proximity-contact rule beyond situations like those presented in *Danaher* and *Leggett*.

## II.

¶ 14. The State attempts to support this violation by relying on the fact that the no-contact condition has not actually been applied to cover proximity-contact in all public places, but instead was expressly limited by defendant's probation officer. The State points to the trial court's finding and conclusion that defendant "was given explicit and specific warning by the Probation Officer that attendance at the fair would place him in contact with children, and that he could not have that contact unless he was supervised by an approved adult." Although the State's rationale might allay potential notice problems, its construction

of the condition gives the probation officer authority to determine which public places defendant may frequent without any judicially-imposed standards to restrain her authority. In the nebulous context of proximity-contact involving unspecified individuals who are members of a broad class, this results in an improper delegation of the court's power to impose probation conditions. See *Moses*, 159 Vt. at 300, 618 A.2d at 481-82 (recognizing that court cannot delegate its statutory authority to impose probation conditions).

¶ 15. In *Moses*, we observed that the Legislature "placed the power to impose probation conditions on the court, and not on the corrections department and its employees." *Id.* at 301, 618 A.2d at 482; 28 V.S.A. § 252(a). Similarly, the power to modify probation conditions also rests exclusively with the courts. 28 V.S.A. § 253(a). Furthermore, the statute requires that petitioner be given a "reasonable opportunity" to contest any modifications before they are imposed. *Id.* § 253(b). Probation conditions must retain some degree of flexibility, and probation officers may be granted a limited amount of discretion in implementing conditions — especially conditions designed to address situations that the court cannot anticipate. *Moses*, 159 Vt. at 300-01, 618 A.2d at 482. As stated in the American Bar Association's Standards for Criminal Justice 2d § 18-2.3(c)(ii), "[p]robation officers should have authority to implement judicially prescribed conditions, but the conditions must be sufficiently precise so that probation officers do not in fact establish them." See also *Moses*, 159 Vt. at 300, 618 A.2d at 482 (citing approvingly to ABA Standard).

¶ 16. The condition in this case lacks sufficient precision. In its entirety, the condition states "[t]he defendant is to have no contact with children under the age of sixteen without prior approval of the probation officer." As applied by the probation officer, this condition prohibits more than touching or verbal, written, and electronic communication with members of the protected class; it prohibits going to certain places where children can be expected to congregate. This interpretation is not, however, evident from its plain language.

¶ 17. The district court's own comments and conduct in this case belie the State's claim that defendant's general no-contact condition was, without the need for excessive and improper interpretation by the probation officer, sufficiently precise to accomplish the purpose of keeping him away from areas children frequent. At its August 28, 2003 hearing, before taking evidence, the court commented on the no-contact condition in response to the State's assertion that defendant

was placing the community at risk by going to places like the fair. The court stated:

> [I]f this is as specific a condition as Mr. Rivers has, there's some real question in my mind about whether this constitutes a violation. . . . But typically I might say in a probation case the *Defendant's not to have contact with children under the age of sixteen except for contact in public places provided that Defendant is not to go to public places frequented by children such as playgrounds, arcades and the like. I might add the fair.*

(Emphasis added.)

¶ 18. Later in the hearing, the court fashioned conditions of release for defendant that specifically addressed the issues in this case. The court's order required defendant to comply with all existing conditions of probation, which included the blanket no-contact condition. Then, in specific reference to the contact issues, the court stated that it "need[ed] to try and tighten this up a bit." The "tightening" process resulted in the following condition of release:

> Defendant shall not initiate or maintain contact with any children under the age of 16 yrs.* Def. shall not frequent places primarily used by children to include but not limited to playgrounds, arcades, school grounds, fair grounds & stores or areas of malls where children under the age of 16 are to be found including stores that cater to clothing stores [sic] that cater to young children such as Old Navy, GAP, Abecrombie and Fitch for kids.

At the subsequent merits hearing, the court concluded that defendant had violated the blanket no-contact condition of his probation by attending the fair unsupervised, even though, unlike the court's more specific condition of release, the probation condition makes no reference to the fair. The question arises then why the court felt the need to add this more specific condition of release when it also required de-

---

* At the hearing, the district court stated that defendant was "not to initiate or maintain contact with children under the age of sixteen, except (unclear) in public places." The condition, as reprinted in the docketing statement, does not include the public-places exception. For some unexplained reason, the order setting out the conditions of release is not included in the trial court's file. As a result, the excerpt in the text above is taken from the docketing statement.

fendant to abide by all of his probation conditions, including the no-contact condition that, in the court's view, already prohibited defendant from going to the fair.

¶ 19. In spite of its own conclusion to the contrary, the district court's treatment of this issue in setting conditions of release demonstrates that: (1) defendant's no-contact probation condition cannot reasonably be read as a prohibition on attending the fair; and (2) if the circumstances of this case demonstrated the need for such a condition, it was well within the court's ability to fashion it in a precise manner that would have avoided an impermissibly overbroad delegation of authority to defendant's probation officer. See *Moses*, 159 Vt. at 301, 618 A.2d at 482 (stating that the discretion vested in a probation officer must be limited in relation to the court's ability to "anticipate the relevant issues and construct a proper condition"). The probation condition at issue proscribes defendant's interaction with all children under the age of sixteen, but makes no mention of specific public locations or events where children are often present. By prohibiting defendant from attending the fair, defendant's probation officer converted the probation condition from a contact-based condition to a location-based condition. In so doing, the probation officer crossed the line between condition interpretation and modification. As the dissent in *Danaher* correctly noted, "a probation officer can give direction within the contours of the court's probation condition but cannot create a condition different from that imposed by the court." 174 Vt. at 596, 819 A.2d at 698 (Dooley, J., dissenting). The State's attempt to support this violation determination by asserting that defendant's probation officer properly limited the application of the blanket no-contact condition causes more problems than it solves. Accordingly, we reject its argument.

*Reversed.*