**STATE of Vermont v. Kenneth BAILEY, Sr.**

[992 A.2d 320]

No. 08-353

¶ 1. March 8, 2010. Defendant appeals the district court's order finding a violation of one of his probation conditions, as well as the administrative judge's denial of his motion to disqualify the trial judge. We affirm.

¶ 2. In May 2004, defendant pled guilty to one count of sexual assault and one count of domestic assault. The victim of his sexual assault was defendant's stepdaughter, whom he victimized when she was a child in his household. Pursuant to the plea agreement which suspended most of his sentence, defendant was subject to a number of special probation conditions, including one that he "not initiate or maintain contact with or reside with any children under the age of 18 years." In September 2008, while defendant was out on probation, the State filed a complaint and supporting affidavit alleging that defendant had violated the above-cited condition by engaging in contact with underage family members at a motel where his son and family were living. At the probation-violation hearing, witnesses for the State testified that on a number of occasions defendant had come to the motel, sat in front of the motel room where his son's family was living, and mingled with family members, including four granddaughters under the age of eighteen. Based on this evidence, the district court found a probation violation and revoked defendant's probation.

¶ 3. On appeal, defendant argues, through counsel, that (1) the court erroneously applied the above-cited probation condition to prohibit defendant's mere proximity to children in a public place; (2) the court's finding that defendant "freely mingled" with underage family members fails to support its conclusion that he violated the condition; and (3) the trial judge violated defendant's due process rights by not disqualifying himself from the probation-violation proceeding because of comments he had made during the original sentencing hearing. Defendant also argues in a supplemental pro se brief that the district court lacked jurisdiction to revoke his probation due to his timely appeal of the court's prior decision on his motion to modify the probation conditions.

¶ 4. Defendant first argues that the district court's finding of a probation violation in this case violates *State v. Rivers*, wherein we declined to find a probation violation based only upon the defendant's "mere proximity" to members of a generally prohibited class while in a public place. 2005 VT 65, ¶ 1, 178 Vt. 180, 878 A.2d 1070. We find this argument unavailing in that *Rivers* is readily distinguishable from the instant case. In *Rivers*, the defendant was prohibited from "having 'contact' with children under the age of sixteen." *Id.* We held that such a no-contact provision was unduly restrictive when applied to prohibit the defendant's "mere proximity" to any member of a generally prohibited class of persons in a public place; accordingly, we reversed the trial court's finding of a probation violation based upon the defendant having been within close proximity of children at a state fair. *Id.* ¶¶ 1, 9. We concluded that a broad rule construing such a condition to prohibit "nothing more than incidental proximity-contact in a public place with numerous, unspecified individuals who are members of an ubiquitous class" would prevent a probationer from frequenting "grocery stores, movie theaters, libraries, fast-food restaurants, parks, or even downtown streets," which would se-

verely restrict the probationer's liberty while doing little to rehabilitate him or prevent the behavior that led to the no-contact condition. *Id.* ¶ 13.

¶ 5. The instant case, in contrast, does not involve incidental proximity-contact in a public place. The evidence demonstrated that on a number of occasions defendant visited his son's residence, where he knew young grandchildren would be, and visited in the yard in the midst of the children. The trial court also found that some of these visits lasted hours. The trial court found, as supported by eyewitnesses, that defendant freely mingled with the children. Defendant placed himself in direct contact with family members belonging to the prohibited class in front of their residence. That defendant's son and others realized that such contact was prohibited is borne out by their testimony — explicitly found not credible by the trial court — claiming that the children were kept isolated from defendant during these visits.

¶ 6. Much of defendant's arguments are based on his view that the trial court's use of the term "mingled" is akin to "mere proximity." Thus, defendant argues that this case is like *Rivers* because his behavior did not result in "anything more than 'proximity contact.' " We believe that the term "mingle" means more than proximity contact; rather, as defined in Webster's New International Dictionary 1564 (2d ed. 1959), it means, "To associate or unite, as . . . persons by ties of relationship; to join in company." Therefore, defendant's conduct here plainly exceeded "mere proximity" to the prohibited class. See *Rivers*, 2005 VT 65, ¶ 1.

¶ 7. Under these circumstances, *Rivers* is not controlling. For similar reasons, we reject defendant's argument that his actions could not be construed as violating the condition prohibiting him from initiating or maintaining contact with anyone in the prohibited class. By visiting his family at their home and staying for periods of up to two hours, during which time he mingled with underage family members, defendant plainly initiated and maintained contact with members of the prohibited class in violation of the probation condition.

¶ 8. Defendant also argues that the trial judge's refusal to disqualify himself from the probation-violation proceeding based on comments the judge had made at the original sentencing hearing violated his right to a fair trial. Again, we find this argument unavailing. At the original sentencing hearing, the judge accepted the parties' plea agreement, but expressed doubt about whether the agreed-upon sentence was long enough and warned defendant that if he did not abide by the probation conditions, the judge would see to it that he would serve as much of the remaining sentence as possible. Defendant argues that these comments demonstrate that the trial judge prejudged his case and particularly the sentencing decision once a violation was found. First of all, we note that, upon receiving defendant's motion to disqualify, the trial judge declined to recuse himself, instead passing the motion on to the administrative judge, who denied the motion. Here, on appeal, defendant does not argue that the administrative judge abused her discretion in denying the motion, even though we have stated that "the question of recusal hinges on the administrative judge's exercise of discretion," and that this Court will disturb the administrative judge's decision only if there is no reasonable basis for the decision. *Ball v. Melsur Corp.*, 161 Vt. 35, 40, 633 A.2d 705, 710 (1993). In this case, while the trial judge's comments could have been better phrased, they appear to be a warning to defendant to abide by his probation conditions. We cannot conclude that the administrative judge abused her discretion by not presuming bias based on these comments. See *id.* at 39, 633 A.2d at 709 (stating that judge subject to disqualifica-

tion motion is accorded presumption of honesty and integrity).

¶ 9. Finally, in a supplemental pro se brief, defendant argues that the district court did not have jurisdiction to find a probation violation while his appeal was pending from an earlier decision on a motion to amend his probation conditions. We find no merit to this argument. The fact that defendant was in the process of challenging a probation condition did not prevent the State from filing a complaint based on an alleged violation of the condition or deprive the court of jurisdiction to find a violation of such a condition.

*Affirmed.*

¶ 10. **Johnson, J.,** dissenting. Ignoring the spirit and purpose of our holding in *State v. Rivers,* the majority has employed an elastic definition of contact to fit the facts of this case. Because I cannot agree that the probation condition in effect clearly prohibited defendant's "mingling" with children under the age of eighteen in a public yard, I respectfully dissent.

¶ 11. Defendant was charged with domestic assault and sexual assault. Pursuant to a plea agreement, the majority of defendant's sentence was suspended, subject to certain conditions of probation. One of these conditions provided:

> 33. Defendant shall not initiate or maintain contact with or reside with any children under the age of 18.

¶ 12. In September 2008, the State filed a complaint alleging that defendant had violated the above probation condition. The complaint included an affidavit signed by an officer stating that defendant had been observed at the motel where his son and son's family reside "sitting in front of [defendant's son's] unit on more than one occasion." The affidavit also stated that minor children had been observed "congregating directly in that area with [defendant] present including a young infant and teen-aged minors." During the probation violation hearing, the owner of the motel testified that defendant's two sons lived at the motel along with their families, including a number of grandchildren ranging in age from a few months to eighteen years. The owner testified that defendant frequently visited his sons and their families and that the owner had observed defendant sitting in front of his son's room and that various family members, including the grandchildren, would "form a little circle" and "socialize," sometimes for hours at a time. The owner's son also testified that defendant and the grandchildren "would all mingle together in front of their room." When asked to clarify what he meant by "mingle," the owner's son testified that "[t]hey would just be in front of the room and they were visiting together." The owner's son also testified that from the distance from which he observed defendant, he could not tell if he was speaking to the children.

¶ 13. Following the hearing, the trial court concluded that defendant had violated the above-cited probation condition. The court made the following findings in support of its conclusion: (1) defendant was a "frequent visitor" at the motel and some visits lasted in excess of two hours; (2) in the course of the visits, defendant "would sit in front or near the front of [his son's] unit" and (3) during these visits, defendant's grandchildren "freely mingled with Defendant, their parents, and other guests." Defendant appealed, arguing that the court erroneously applied the probation condition to prohibit defendant's "mere proximity to children" in a public place and that the court's finding that defendant "freely mingled"

with his minor grandchildren was not enough to establish a probation violation.[*]

¶ 14. This Court has "repeatedly recognized that probation conditions should not be unduly restrictive of the probationer's liberty or autonomy" and that any restriction imposed "must be reasonably related to protecting the public from a recurrence of the crime that resulted in the imposition of probation." *State v. Rivers*, 2005 VT 65, ¶ 9, 178 Vt. 180, 878 A.2d 1070 (quotation omitted); *State v. Moses*, 159 Vt. 294, 297, 618 A.2d 478, 480 (1992). Thus, to fulfill due process requirements, a convicted offender must "be given fair notice as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty." *State v. Peck*, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988). Here, construing the above-cited probation condition to prohibit mere "mingling" in a public place with a large protected class violates both of these principles. Such a broad construction has no reasonable relationship to protection of potential victims as it would bar even incidental contact with the protected class, nor does it give a probationer fair notice of how to comply with the condition.

¶ 15. Contrary to the majority's holding, this case is largely governed by *Rivers*. In that case, we addressed whether a defendant violated a probation condition prohibiting him from having contact with children under the age of sixteen based on a finding that he had placed himself "in close physical proximity to minors under 16 years of age" while standing near them at a public fair. *Rivers*, 2005 VT 65, ¶ 1 (quotation omitted). In finding for the defendant, we declined to apply the State's proffered "proximity-equals-contact" rule in determining whether the defendant had violated the no-contact condition. In support of our rejection of this rule, we noted that public incidental contact does not present the same dangers to a protected class as unapproved proximity-contact with minors in the context of a private residence, and we observed that "[i]n the public setting, a probationer is several steps removed from the opportunity to commit abuse." *Id.* ¶ 12.

¶ 16. Similarly, here, there was no evidence presented indicating that defendant was ever in his sons' motel rooms. Nor was there evidence presented that defendant ever talked with, touched, or in any way communicated with any minor child under the age of eighteen while at the motel. Instead, the evidence indicates that defendant sat in the public space outside his sons' motel rooms and carried on conversation with his sons and other motel residents. Moreover, the factual circumstances testified to by the witnesses do not suggest that any child was ever at risk. Though during these visits there were children orbiting around or "mingling" with defendant, these facts do not indicate that defendant either "initiated or maintained contact" with the protected class. I, therefore, cannot conclude that the trial court's finding that defendant "freely mingled" with the protected class in a public place amounts to any more than "mere proximity" and was not enough to trigger a probation violation. Indeed, such a broad construction of the condition appears to have no relationship to the rehabilitative purposes of probation. See *State v. Jones*, 550 N.E.2d 469, 473 (Ohio 1990) (Brown, J., dissenting) (arguing against broad construction of probation condition prohibiting "association" with protected class and noting that purpose of condition "was not to force [the defendant] to live as a hermit, but to protect the public and encourage [the defendant's] rehabilitation by minimizing

---

[*] I agree with the majority that defendant's claims that the trial judge should have recused himself and that the trial court lacked jurisdiction over the matter have no merit. See *ante*, ¶¶ 8, 9.

the risk that [the defendant] will repeat his offense").

¶ 17. Nevertheless, the majority attempts to draw a false distinction between the case at hand and *Rivers. Ante,* ¶ 6. Beyond summarily stating a distinction, however, the majority fails to articulate exactly how "mingling" is materially different from "mere proximity" and, instead, seems to suggest that being "in the midst of" a large protected class in a public yard is somehow different from the "incidental contact" at a public fair that we found insufficient to trigger the probation violation in *Rivers.* This conclusion amounts to a "mingling-equals-contact rule" that is just as overbroad and unduly restrictive here as the "proximity-equals-contact rule" we rejected in *Rivers.* 2005 VT 65, ¶ 13; see also *State v. Danaher* 174 Vt. 591, 595 n.3, 819 A.2d 691, 697 n.3 (2002) (mem.) (Dooley, J., dissenting) (criticizing majority's "elastic" definition of contact, which would include both the defendant's "continuous presence in the home with a child" as well as his "presence in a car by a bus stop some unknown distance from the victim who is standing outside").

¶ 18. Moreover, the facts before us now, like the facts before us in *Rivers,* are readily distinguishable from circumstances we have found to support a violation of no-contact probation conditions. The key distinguishing factor in these cases is that they all involve some constellation of facts indicating that the defendant *intended* to contact the victim or the class of persons protected by the probation condition. See *Danaher,* 174 Vt. at 592-93, 819 A.2d at 694 (concluding that evidence indicating the defendant placed himself in physical proximity to a child with whom his probation condition prohibited all contact, would not leave after the child asked him to, and stared at the child, supported the trial court's conclusion that the defendant intentionally violated the no-contact probation condition);

*Benson v. Muscari,* 172 Vt. 1, 4, 769 A.2d 1291, 1295 (2001) (noting that State must show only that defendant *intended* to do the act that constituted the violation); *State v. Leggett,* 167 Vt. 438, 441-42, 709 A.2d 491, 493 (1997) (concluding that evidence that the defendant was in a private residence with two minors on multiple occasions was enough to support finding that the defendant violated probation condition prohibiting contact with minors); see also *Hunter v. State,* 883 N.E.2d 1161, 1163 (Ind. 2008) (concluding that evidence was insufficient to establish violation of probation condition prohibiting contact with minors where facts did not demonstrate a sufficient "quality and quantity of interactive contact," but rather indicated only a "momentary presence" and incidental contact). Notwithstanding the importance we have placed on a demonstration of a probationer's intent to contact a protected class, the trial court here made no findings indicating that the claimed contact was anything but incidental; nor did the court find that any child was ever placed at risk.

¶ 19. I respectfully dissent.