NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 29

No. 2019-110

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Darryl M. Galloway | January Term, 2020 |

David R. Fenster, J.

Sarah George, Chittenden County State's Attorney, Pamela Hall Johnson and
  Andrew M. Gilbertson, Deputy State's Attorneys, and William Conlon, Law Clerk
  (On the Brief), Burlington, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Joshua S. O'Hara, Appellate Defender, Montpelier,
  for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **COHEN, J.** Defendant Darryl Galloway appeals the trial court's conclusion that he violated a condition of probation when he failed to complete a sex-offender treatment program while incarcerated. He argues that the Department of Corrections (DOC) impermissibly modified the condition in requiring him to complete the in-house program. We agree and reverse.

¶ 2. In January 2009, defendant pled guilty to four counts of lewd and lascivious conduct contrary to 13 V.S.A. § 2601. The charges stemmed from incidents in which defendant

exposed his penis to clothing store clerks in 2006. The trial court sentenced defendant to four consecutive terms of one to five years' imprisonment, suspended with probation, but with one year to serve in each count. The result was an aggregate sentence of four to twenty years, suspended, except for four years to serve. At the change-of-plea hearing, the court imposed several conditions of probation and placed defendant on probation. Condition 31 provides: "You will successfully enroll, participate in, and complete a program for sex offenders approved by DOC and assume the costs of your treatment." The court read condition 31 to defendant and he later signed the probation order.

¶ 3. In March 2010, DOC filed a violation-of-probation (VOP) complaint against defendant for violating condition 31. DOC alleged that while incarcerated, defendant was interviewed to determine eligibility for admission to the Vermont Treatment Program for Sexual Abusers (VTPSA); that defendant began the program in April 2009; and that following disciplinary infractions against program staff and suspension from the program, defendant refused to complete the program. Defendant's probation officer also declared that he asked defendant if he "understood that not engaging in the in-house treatment program as recommended by the VTPSA team placed [defendant] in violation of his probation order," and that defendant answered affirmatively.

¶ 4. A VOP hearing was held in May 2010. The court described condition 31 as follows: "that he participate in the in-house sex-offender treatment program and it's alleged that he did not participate satisfactorily." The State proposed a deal whereby defendant would admit to the violation and only two of the four suspended sentences would be revoked, leaving him with two to ten years to serve on two counts and two to ten years suspended with probation on the other two counts. The court described the State's proposal to defendant and explained that continued

2

failure to complete the program could result in probation revocation on the other two counts, causing him to serve the entire twenty-year sentence. Defendant agreed and admitted to violating condition 31. The court revoked probation on counts one and two and continued probation under the original conditions in counts three and four.

¶ 5. In January 2019, DOC released defendant after he served the ten-year sentence on counts one and two. DOC put him on a bus bound for Seattle before realizing he was still on probation on counts three and four. DOC then retrieved defendant, placed him back in custody, and filed a second VOP complaint for violating condition 31 on counts three and four. DOC alleged that defendant refused to participate in VTPSA during his ten years of incarceration.

¶ 6. In March 2019, the trial court held another VOP hearing. Noting a lack of evidence to prove that defendant was waiting to complete sex-offender treatment in the community, and his willingness to leave for Seattle without completing the treatment, the court found that defendant did not intend to complete sex-offender treatment. The court then found that defendant had been on probation since his guilty plea in 2009 and that given his ten-year failure to complete the treatment, he did not complete the programming within a reasonable amount of time. Relying on the 2010 VOP hearing record, the court found that given defendant's VOP admission for failing to complete VTPSA in the facility, and his acknowledgement of DOC's warning that not engaging in the in-house program placed him in violation of probation, he was on notice that he needed to complete the program in the facility. The court thus found defendant in violation of probation, revoked probation on counts three and four, and imposed the underlying two-to-ten-year sentence on those counts. This appeal followed.

¶ 7.    Defendant argues that he was not on notice that he had to complete the treatment program while incarcerated, among other reasons, because the plain language of the condition does not state that it must be completed while incarcerated.  He maintains that DOC's requirement that he complete the in-house program amounts to a modification of the condition, a power vested only in the courts.  Defendant also contends that the 2019 VOP court filled an evidentiary gap in the State's case by relying on the record of the 2010 proceedings and thus deprived him of due process.  He asks us to reverse the 2019 VOP finding and order his release.

¶ 8.    The State argues that defendant obtained fair notice that failure to complete the in-house VTPSA constituted a violation of probation from his probation officer, other DOC personnel, the 2010 VOP court, and his 2010 VOP admission.  It maintains that defendant did not raise his modification argument before the trial court and that he fails to prove plain error on that issue.  The State also argues that DOC determined that the appropriate program for defendant was the VTPSA high-intensity prison program, such that VTPSA was the program "approved" by DOC.

¶ 9.    In a VOP hearing, the State has the burden to prove "by a preponderance of the evidence that the probationer has violated an express or clearly implied probation condition." State v. Stuart, 2018 VT 81, ¶ 10, 208 Vt. 127, 196 A.3d 306.  If the State shoulders this initial burden, "the burden shifts to the probationer to prove the violation was not in his or her control, but rather resulted from extrinsic factors through no fault of the probationer." Id.

¶ 10.    Our review of the trial court's conclusion that a probationer violated a probation condition involves two steps.  "First, we examine the trial court's factual findings and will uphold them if supported by credible evidence." State v. Kane, 2017 VT 36, ¶ 14, 204 Vt. 462, 169 A.3d

762 (quotations omitted). Second, we examine the court's legal conclusion that the probationer's actions violated the probation condition. State v. Bostwick, 2014 VT 97, ¶ 11, 197 Vt. 345, 103 A.3d 476. "We uphold that legal conclusion if it is 'reasonably supported by the findings and does not constitute an erroneous interpretation of the law.' " Id. (quoting State v. Sanville, 2011 VT 34, ¶ 7, 189 Vt. 626, 22 A.3d 450 (mem.)).

¶ 11. We agree with the State that defendant did not raise the modification argument before the trial court. At the 2019 VOP hearing, defendant argued that condition 31 does not state that he must complete VTPSA while incarcerated and that after the 2010 VOP hearing, DOC did not warn him that he risked another violation if he failed to complete the program while incarcerated. This can only be construed as an argument regarding lack of notice, not that DOC impermissibly modified the condition. Because defendant did not raise his modification argument before the trial court, we review for plain error. See, e.g., State v. Provost, 2014 VT 86A, ¶ 14, 199 Vt. 568, 133 A.3d 826. Reversal on plain-error grounds is appropriate where the error is "obvious" and "strikes at the heart of [defendant's] constitutional rights or results in a miscarriage of justice." Id. (quoting State v. Ayers, 148 Vt. 421, 426, 535 A.2d 330, 333 (1987)).

¶ 12. In this case, we uphold the trial court's factual findings that defendant was on probation in 2019 and subject to condition 31. We reverse as plain error the court's legal conclusion that defendant violated condition 31 because the conclusion rests on a DOC interpretation of the condition that is inconsistent with its plain language and thus amounts to an impermissible modification by DOC. Because defendant's requested remedy is the same for all his arguments, and because we grant that remedy, we do not address his other arguments.

¶ 13.  "The power to impose probation conditions rests with the court, not employees of the DOC." State v. Putnam, 2015 VT 113, ¶ 64, 200 Vt. 257, 130 A.3d 836; see also 28 V.S.A. § 252(a) ("The conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so."). Similarly, the court retains the exclusive power to modify probation conditions. Bostwick, 2014 VT 97, ¶ 14; see also 28 V.S.A. § 253(a) (granting court power to modify or add probation conditions). However, probation conditions must retain a measure of flexibility, and "probation officers may be granted a limited amount of discretion in implementing conditions." State v. Rivers, 2005 VT 65, ¶ 15, 178 Vt. 180, 878 A.2d 1070. The line between appropriate DOC implementation of probation conditions and impermissible modification is adherence to the plain language of the condition. See Bostwick, 2014 VT 97, ¶ 12; Rivers, 2005 VT 65, ¶ 19; cf. State v. Bryan, 2016 VT 16, ¶ 23, 201 Vt. 298, 142 A.3d 204 ("Where . . . we have not previously addressed the type of behavior at issue with respect to [a] probation [c]ondition . . . we return to the plain and ordinary meaning of the probation condition's terms."); State v. Galanes, 2015 VT 80, ¶¶ 13, 22, 199 Vt. 456, 124 A.3d 800 (noting that "[w]hen interpreting the language of a probation condition, we look first to the plain and ordinary meaning of the terms" and that "[w]e are required . . . to enforce a probation condition as it is written and not as we wish it had been written").

¶ 14.  A probation officer crosses the line between implementation and modification of a probation condition when the officer's interpretation of the condition is inconsistent with its plain language. See Bostwick, 2014 VT 97, ¶ 12; Rivers, 2005 VT 65, ¶ 19. In past cases, we have declined to read words into probation conditions, or to enforce a probation officer's interpretation

6

imposing requirements not reflected in the language of the condition. In <u>Rivers</u>, the condition read, "[t]he defendant is to have no contact with children under the age of sixteen without prior approval of the probation officer." 2005 VT 65, ¶ 16. The probation officer warned the defendant that attending a fair would put him in contact with children and thus his unsupervised attendance risked a VOP charge. After the defendant went to a fair, the trial court ruled that he violated the condition by placing himself "in close physical proximity to minors under 16 years of age" while standing near them at the fair. <u>Id</u>. ¶ 1. We reversed, observing that the probation officer's interpretation of the no-contact condition prohibited not just touching or verbal, written, or electronic communication with children, but also prohibited "going to certain places where children can be expected to congregate," an interpretation not "evident" from the condition's plain language. <u>Id</u>. ¶ 16. We found it significant that the condition proscribed the defendant's interaction with all children under the age of sixteen but was silent on "specific public locations or events where children are often present." <u>Id</u>. ¶ 19. Accordingly, we held that the "probation officer converted the probation condition from a contact-based condition to a location-based condition," and thus "crossed the line between condition interpretation and modification." <u>Id</u>.

¶ 15.  Similarly, in <u>Bostwick</u>, the relevant condition provided: "You shall reside where your [s]upervising [o]fficer directs." 2014 VT 97, ¶ 3. The defendant was released from incarceration and his probation officer allowed him to live temporarily in a motel but directed him to look for permanent housing "daily" and imposed a deadline to show "a genuine housing search effort." <u>Id</u>. ¶ 4. The trial court found a violation because the defendant's call log indicated that he did not call landlords for several weeks and because the probation officer's deadline passed without the defendant securing approved housing. We reversed, again holding that the plain

7

language of the probation condition did not support the VOP finding and that the probation officer crossed the line between condition implementation and modification in imposing the daily search requirement and the deadline by which defendant needed to find housing. Id. ¶¶ 12, 17. We declined the State's invitation to read the condition as "a general probation condition requiring that [defendant] find a residence approved by his probation officer," noting that the condition gave the officer the authority only to "direct" the defendant to live somewhere. Id. ¶ 19. We also rejected, as contrary to the plain language of the condition, the trial court's conclusion that it was "more reasonable" to interpret the condition not as requiring DOC to choose a residence for the defendant, but rather to set out guidelines within which a probationer is to locate housing on his own and then seek DOC approval. Id. ¶ 20.

¶ 16.    Addressing a defendant's argument that a probation condition did not give him fair notice of prohibited conduct, we even declined to interpret a probation condition to mean what the drafting court likely intended to say but did not. In Galanes, the defendant was subject to the following condition: "You must inform your [probation officer] of the name and contact information of any person with whom you are planning to have a date or with whom you are planning to begin a dating, sexual or romantic relationship, prior to the date or beginning of the relationship." 2015 VT 80, ¶ 2. The trial court found a violation when defendant had an unplanned sexual encounter with his housekeeper and therefore did not inform his probation officer beforehand. We reversed, holding that the language of the condition—in particular, the terms "sexual relationship" and "planning"—did not give the defendant fair notice that his spontaneous conduct was prohibited. Id. ¶¶ 9, 21. We recognized the State's suggestion that the sentencing court must have intended a broad reading of the condition, but concluded that "[w]e are

8

required . . . to enforce a probation condition as it is written and not as we wish it had been written." Id. ¶ 22.

¶ 17. Here, condition 31 provides: "You will successfully enroll, participate in, and complete a program for sex offenders approved by DOC and assume the costs of your treatment." DOC interpreted this language to require defendant to complete the VTPSA high-intensity program while incarcerated. Based on the plain language of the probation condition, we conclude that DOC's interpretation constitutes an impermissible modification of the condition.

¶ 18. First, the 2009 sentencing court used the indefinite article "a" to describe the required program. The court did not specify a particular program, and certainly did not require the VTPSA high-intensity prison program. Second, the sentencing court used the word "approved"— not "directed," not "mandated," not "assigned." "Approve" means "to have or express a favorable opinion of; to accept as satisfactory; to give formal or official sanction; to take a favorable view." Approve, Miriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/approve [https://perma.cc/X56K-V4PQ]; see also Approve, Black's Law Dictionary (11th ed. 2019) (defining "approve" as "[t]o give formal sanction to; to confirm authoritatively"). We decline the State's invitation to read the word "approved" as "directed" or the latter's synonyms. Third, the sentencing court required defendant to pay for his treatment. The State offers no explanation of how defendant was to pay for his treatment while incarcerated or how its interpretation of the condition accounts for that express requirement. The requirement to pay for the program contemplates that defendant can satisfy the condition in the community. Fourth, when read as a whole, the condition indicates that defendant has a choice of programs—a choice subject to DOC approval. Contrary to DOC's insistence on the VTPSA high-intensity

9

prison program, flexibility is written into the condition. To the extent the condition grants the probation officer discretion in its implementation, it is to approve or reject the program defendant chooses. In conferring upon itself the power to direct defendant to complete the VTPSA high-intensity program during the unsuspended portion of his sentence, DOC added requirements not expressly or impliedly present in the condition and thus crossed the line between implementation and modification. See Bostwick, 2014 VT 97, ¶ 12; Rivers, 2005 VT 65, ¶ 19. Defendant has been incarcerated since he was sentenced in January 2009. Thus, he has not had the opportunity to complete a sex-offender treatment program of his choosing in the community. The plain language of the probation condition does not support the trial court's conclusion that defendant violated its terms.

¶ 19. The court's conclusion constitutes plain error and must be reversed. As noted, reversal on plain-error grounds is appropriate where the error is "obvious" and "strikes at the heart of [defendant's] constitutional rights or results in a miscarriage of justice." Provost, 2014 VT 86A, ¶ 14 (quoting Ayers, 148 Vt. at 426, 535 A.2d at 333). "[E]rrors in unsettled areas of law are not obvious, and therefore not plain." Id. The court's conclusion that defendant violated condition 31—a conclusion based on DOC's impermissible modification of the condition—exposed defendant to ten additional years of incarceration and thus resulted in the deprivation of constitutional rights and a miscarriage of justice. See Putnam, 2015 VT 113, ¶ 73 (finding plain error where delegation of court's authority to impose probation conditions deprived defendant of substantial right and affected "the integrity of the judicial process by giving the probation officer authority reserved to the courts"). Given our settled law in Rivers and Bostwick, it was plain error for the trial court to permit DOC to depart so far from the plain language of condition 31.

¶ 20. The State points to our line of cases holding that a defendant can violate a condition or requirement of probation "even if adequate time remains within the probation term to complete the requirement where a defendant has 'actively refused to participate' or the defendant's conduct evinces an intent not to comply." Stuart, 2018 VT 81, ¶ 23 (citing State v. J.S., 2018 VT 49, ¶ 16 n.5, 207 Vt. 379, 189 A.3d 552, and Provost, 2014 VT 86A, ¶¶ 15-16). In those cases, however, the conditions expressly mandated specific programs and the defendants' actions constituted failures to complete those programs. See J.S., 2018 VT 49, ¶¶ 13, 18 (upholding VOP finding where defendant was required to "appear before the Restorative Justice Panel and actively participate and complete all of the conditions set by the Panel" and defendant refused to take responsibility for the offense, a prerequisite for Panel participation); Provost, 2014 VT 86A, ¶¶ 2-6, 16 (upholding VOP finding where defendant was required to complete the Domestic Violence (DV) Solutions program and defendant cancelled two intake meetings and was uncooperative and threatening at a third). In contrast, condition 31 allows defendant to choose a sex-offender treatment program and complete it in the community. Because defendant has not had the opportunity to participate in a treatment program of his choosing in the community, we cannot find that he has actively refused to participate or that his conduct evinces an intent not to comply with condition 31.

¶ 21. Finally, our interpretation does not eliminate DOC discretion or flexibility in implementing condition 31. See Rivers, 2005 VT 65, ¶ 15 (observing that probation conditions must retain some flexibility and that "probation officers may be granted a limited amount of discretion in implementing conditions"). DOC retains the discretion to approve or reject the program defendant chooses and the flexibility inherent in supervising defendant's progress. In

implementing the condition, DOC must bear in mind that the purpose of probation is not to punish defendant for the crime, but to rehabilitate defendant and protect society. State v. Moses, 159 Vt. 294, 305, 618 A.2d 478, 484 (1992). Consistent with the rehabilitative purpose of probation, DOC must assist defendant in finding suitable sex-offender treatment programs. DOC can also seek court modification of the condition under 28 V.S.A. § 253(a) (authorizing court to modify probation conditions "on application of a probation officer or of the offender, or on its own motion").

Reversed; mandate to issue forthwith.

FOR THE COURT:

_____

Associate Justice

¶ 22. **CARROLL, J., dissenting.** I disagree that the trial court committed error, let alone plain error, in finding that defendant violated condition 31 by failing to complete the sex-offender-treatment program approved by DOC. The language of the condition properly delegated authority to DOC to oversee defendant's completion of a sex-offender-treatment program appropriate to defendant's needs. DOC determined the appropriate program was the high-intensity Vermont Treatment Program for Sexual Abusers (VTPSA), which is offered only in prison. Defendant had notice from DOC and the court that he was expected to complete VTPSA or he would be in violation of his probation order. He failed to complete the program. The trial court properly determined that this was a violation of condition 31. However, even if the court erred,

the alleged error was not so obvious under existing law that reversal is justified. Accordingly, I dissent.

¶ 23. It is true that the courts have exclusive power to impose or modify probation conditions. State v. Rivers, 2005 VT 65, ¶ 15, 178 Vt. 180, 878 A.2d 1070; 28 V.S.A. § 253(a). However, we have repeatedly stated that probation conditions should retain some flexibility and that probation officers may be granted limited discretion to implement conditions so long as they are not effectively establishing them. Rivers, 2005 VT 65, ¶ 15. And we have specifically recognized in the context of conditions imposing counseling requirements that "[d]elegation of the implementation of probation conditions is necessary to require a defendant to participate in rehabilitative programs appropriate to the defendant's needs at a particular time in the probation period." State v. Moses, 159 Vt. 294, 300, 618 A.2d 478, 482 (1992); cf. State v. Cornell, 2016 VT 47, ¶ 18, 202 Vt. 19, 146 A.3d 895 (explaining that it is permissible "to delegate authority to a probation officer to select among a predetermined list of programming options relevant to a defendant's particular needs—for example, substance abuse counseling or anger management").

¶ 24. Condition 31 provides: "You will successfully enroll, participate in, and complete a program for sex offenders approved by DOC and assume the cost of your treatment." This condition properly delegated to DOC the authority to oversee defendant's completion of a sex-offender treatment program appropriate to his needs and risk level. Moses, 159 Vt. at 300, 618 A.2d at 482.

¶ 25. Unlike the majority, I believe the term "approve" is broad enough to encompass the interpretation DOC gave it. Ante, ¶ 18. The condition plainly authorized DOC to ensure defendant participated in the best and most effective program for defendant's needs. If DOC determined that

13

defendant posed a low risk, it could approve a community-based program to satisfy the probation condition. In that case, defendant would be required to cover the costs of his treatment. If, however, DOC determined that defendant posed a high risk to reoffend, it could approve a more intensive prison-based program instead. The condition did not, as the majority suggests, give defendant free rein to choose which program he wanted to participate in. Ante, ¶ 20. Rather, it gave DOC authority to oversee defendant's completion of a sex-offender program that DOC determined to be appropriate.[*]

¶ 26. As it happened, DOC screened defendant when he was first incarcerated and determined that the high-intensity VTPSA was best suited to his needs and risk level. This determination was based in part on defendant's criminal history, which included eleven prior sex offenses. The high-intensity VTPSA is offered only in prison. Accordingly, defendant was required to complete the program while serving the incarcerative portion of his sentence to comply with condition 31. The plain language of the condition supports DOC's means of implementing it. I therefore disagree with the majority's conclusion that DOC improperly modified the condition by "conferring upon itself the power to direct defendant to complete the VTPSA high-intensity program during the unsuspended portion of his sentence." Ante, ¶ 18.

¶ 27. The cases relied upon by the majority do not support its conclusion that DOC impermissibly modified condition 31. In State v. Bostwick, we reversed the trial court's finding

---

[*] According to the Vermont Department of Corrections website, "[m]ore intensive treatment services are reserved for higher risk cases." Vt. Dep't of Corr., Vt. Treatment Program for Sexual Abusers (last visited Feb. 27, 2020), https://doc.vermont.gov/programs/vtpsa [https://perma.cc/WBT7-B8PM]. Defendant was evidently considered by DOC to be at a relatively high risk to reoffend. It is therefore unlikely that DOC would have approved programming in the community.

that the defendant violated a condition requiring the defendant to reside where his probation officer directed by failing to find permanent, approved housing by the date set by the officer and by failing to call landlords every day. 2014 VT 97, ¶ 17, 197 Vt. 345, 103 A.3d 476. We explained that these conditions were not obviously implied by the residency condition, which "gives the officer the authority only to direct defendant to live somewhere. If the officer has given defendant no direction as to where he should live, or gave and then somehow withdrew his direction, defendant cannot be said to be violating his probation officer's nonexistent direction." Id. ¶ 19. Similarly, in State v. Rivers, we reversed a VOP finding that was based on the probation officer's determination that a condition prohibiting the defendant from having contact with children under the age of sixteen extended to prohibit him from going to places where children might congregate. 2005 VT 65, ¶ 19. We held that the interpretation was not supported by the plain language of the condition and the officer therefore "crossed the line between condition interpretation and modification" by "convert[ing] the probation condition from a contact-based condition to a location-based condition." Id.

¶ 28. Unlike the conditions in Bostwick and Rivers, condition 31 expressly gave the probation officer authority to oversee defendant's completion of sex-offender treatment approved by DOC. This case is therefore more like State v. Peck, 149 Vt. 617, 547 A.2d 1329 (1988), which we distinguished in Bostwick. Bostwick, 2014 VT 97, ¶ 19. In Peck, the defendant was required to participate in and complete mental-health counseling to the full satisfaction of his probation officer. 149 Vt. at 620, 547 A.2d at 1331. The probation officer directed the defendant to participate in a sexual offenders group that required him to take responsibility for his conduct. Defendant attended several sessions but refused to take responsibility and was terminated from the

15

group. We affirmed the trial court's conclusion that the defendant's refusal to admit responsibility in the group constituted a knowing failure to complete counseling to the satisfaction of his probation officer. Id. at 621, 547 A.2d at 1332. In Peck, as here, the probation officer had discretion to implement the court's condition by requiring completion of an approved program, and the defendant's failure to complete the program constituted a violation. See id.; Bostwick, 2014 VT 97, ¶ 19 (explaining that counseling condition at issue in Peck was distinguishable from residency condition in Bostwick because in Peck probation officer was supposed to oversee completion of counseling program).

¶ 29. It is clear from the record that defendant had notice that DOC expected him to successfully complete the VTPSA in order to comply with condition 31. The State meets its burden of proving a probation violation "by showing that there has been a violation of the express conditions of probation, or of a condition so clearly implied that a probationer, in fairness, can be said to have notice of it." State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996) (quotations omitted). "Fair notice can . . . be provided by the instructions and directions given to defendant by his or her probation officer." Peck, 149 Vt. at 619-20, 547 A.2d at 1331.

¶ 30. At the first VOP hearing in May 2010, defendant admitted that he had violated condition 31 by voluntarily withdrawing from VTPSA. According to the complaint filed by DOC, defendant had been warned that failing to complete VTPSA would result in a probation violation, and he indicated he understood. The State's attorney explained at the hearing that "it's important to note for the defendant's understanding that the probation—or the Department of Corrections would only release him if he did treatment." The court agreed and stated, "I mean, if he doesn't complete VTPSA program, the sex-offender program, they're probably going to have you max out

16

on that. And you may well be revoked on the additional two to ten years." The DOC representative attending the hearing stated, "Exactly." Defense counsel then stated that defendant understood and accepted those requirements. Defendant stated that he agreed. Defendant therefore had ample notice, from DOC and the 2010 VOP court, that completing VTPSA in prison was required to avoid a further violation of condition 31. See State v. Danaher, 174 Vt. 591, 593, 819 A.2d 691, 694-95 (2002) ("We will not disturb the trial court's finding regarding notice if the record contains any credible evidence that fairly and reasonably demonstrates that defendant received fair and actual notice."). Importantly, defendant did not challenge DOC's interpretation of condition 31 at the 2010 VOP proceeding. Even if it could be said that DOC did not interpret, but instead modified, condition 31, defendant could have made this challenge at that time and failed to do so. See Bostwick, 2014 VT 97, ¶ 14 ("Before being subject to any modification to a probation condition, a defendant must have a reasonable opportunity to challenge that modification.").

¶ 31.    After his probation was revoked in 2010, defendant was repeatedly offered the opportunity to participate in VTPSA, but he refused to do so. It is well-settled law that "a probationer's failure to participate in an assigned program constitutes noncompliant action by the probationer." State v. J.S., 2018 VT 49, ¶¶ 15-16, 207 Vt. 379, 189 A.3d 552 (emphasis omitted); see also State v. Provost, 2014 VT 86A, ¶ 16, 199 Vt. 568, 133 A.3d 826 (holding same). "Moreover, once the probationer has actively refused to participate, a violation finding is not 'premature,' even if time remains in which to complete the program." J.S., 2018 VT 49, ¶ 16. The majority asserts that these cases do not apply because the probation conditions addressed therein "expressly mandated specific programs." Ante, ¶ 20. However, we have applied the same principles in many other cases that involved conditions similar to the one here. See, e.g., State v.

<u>Masse</u>, 164 Vt. 630, 631, 674 A.2d 1253, 1254 (1995) (mem.) (holding defendant violated condition directing him to "actively participate in mental health and sex offender counseling to the satisfaction of [his] probation officer" through poor attendance, unwillingness to discuss offense, take responsibility, or share thoughts and feelings, and failure to complete homework assignments); <u>State v. Foster</u>, 151 Vt. 442, 443, 447, 561 A.2d 107, 109 (1989) (affirming violation of condition requiring defendant to "actively participate in mental health counseling related to sexual offending potential" where defendant attended screening appointment but refused to cooperate with psychologist by talking about offense); <u>Peck</u>, 149 Vt. at 620, 547 A.2d at 1331 (holding defendant responsible for violating condition requiring he attend and participate in mental-health counseling as directed by probation officer and complete it to officer's satisfaction where defendant continually refused to admit offense and was terminated from group). Defendant's steadfast refusal to participate in VTPSA was sufficient to support a violation even if he still had time in which he theoretically could complete some other treatment program. I therefore believe the State met its burden and the court properly found that defendant violated condition 31.

¶ 32. Moreover, even if the court erred in finding a violation of condition 31 based on defendant's failure to complete VTPSA in prison, I disagree that the error was so obvious that it warrants reversal. "A plain error is one that is clear or obvious under existing law." <u>State v. Koons</u>, 2011 VT 22, ¶ 13, 189 Vt. 285, 20 A.3d 662. Under existing law, it was not obvious that DOC exceeded its authority by requiring defendant to complete VTPSA in prison. We have repeatedly stated that it is permissible to delegate authority to a probation officer to select a programming option within a predetermined category that is relevant to a defendant's particular

needs. Cornell, 2016 VT 47, ¶ 18. The condition gave DOC discretion to determine that defendant required the high-intensity program, to approve this program and to oversee his completion of that program. The court reasonably concluded under the circumstances that defendant failed to comply with condition 31 by not completing VTPSA while incarcerated. If this was error, it was not clear or obvious enough to warrant reversal absent a timely objection.

¶ 33. "[A] probation agreement is not to be treated as a strait-jacket that defies common sense." Austin, 165 Vt. at 400, 685 A.2d at 1083 (quotation omitted). The majority's interpretation of condition 31 is overly narrow and denies DOC the necessary flexibility to implement the rehabilitative goal of ensuring defendant gets the treatment he needs to prevent recidivism. I therefore respectfully dissent.

_____

Associate Justice